**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE: AMERICAN MEDICAL SYSTEMS, INC.
PELVIC REPAIR SYSTEMS
PRODUCTS LIABILITY LITIGATION

Case No. 2:12-md-2325

---

THIS DOCUMENT RELATES TO ALL CASES

**MEMORANDUM OPINION
AND PRETRIAL ORDER # 12**
(Plaintiffs' Motion to Produce Documents and Depositions from Prior
Related Litigation or to Modify Stipulated Protective Orders, ECF No. 181)

In this multi-district litigation ("MDL") concerning mesh products used to repair pelvic organ prolapse and stress urinary incontinence, the plaintiffs have requested American Medical Systems, Inc. ("AMS") to produce into the MDL depository "all documents, depositions and other written discovery from any case filed against it in state or federal court involving transvaginal mesh."  (ECF No. 193-1, at 1.)  Specifically included in the request were documents and deposition transcripts from the cases of *Ambroff v. AMS*, No. C-08-04289 (N.D. Cal.) ("*Ambroff*") and *Boatman-Morse v. Montemayor*, No. C2008 8360 (Az. Sup. Ct., Pima Cty.) ("*Boatman-Morse*").  AMS objected, invoking the provisions of a Stipulated Protective Order ("SPO") entered in each case.

After unsuccessful efforts to resolve the matter without court involvement, the plaintiffs filed the instant Motion to Produce Documents and Depositions from Prior Related Litigation or, in the Alternative, to Modify Stipulated Protective Order Entered in *Ambroff* (ECF No. 181).  AMS responded in opposition (ECF No. 193), and the

plaintiffs filed a reply (ECF No. 196).  With leave of court (Pretrial Order # 11, ECF No. 203), AMS filed a sur-reply (ECF No. 204).

## Applicable Facts

Both *Ambroff* and *Boatman-Morse* were filed in 2008.  In June, 2009, the *Ambroff* plaintiffs' counsel and an attorney for AMS signed a Stipulated Protective Order which was entered by a magistrate judge on June 19, 2009 (ECF No. 181-1).  On March 25, 2010, a virtually identical Stipulated Protective Order was entered in *Boatman-Morse* (ECF No. 181-2).  Documents were produced to the plaintiffs and at various times during 2010 and 2011, eleven depositions were taken of AMS employees, of whom seven were Rule 30(b)(6) corporate representatives.  (ECF No. 181, at 3.)

Fact discovery closed in *Ambroff* on August 6, 2010.  (ECF No. 193, at 8.)  More than a year later, on October 19, 2011, new counsel for AMS advised the court that she had learned that "there is a database of documents that were not scrutinized at the first" and the attorneys for AMS "are looking to see if there are any documents that are not produced." (No. 193-1, at 106.)  On November 9, 2011, the *Ambroff* parties filed a Joint Status Report, in which they informed the court that they were in dispute over 400 "inadvertently disclosed privileged and confidential documents" ("clawback documents").  (ECF No. 193-1, at 125.)  The Joint Status Report also disclosed that the documents not previously produced were emails of various AMS employees.  *Id.* at 126.  AMS agreed to produce emails of the eleven employees who had been deposed within 30 days.  *Id.*  On November 8, 2011, AMS produced 82 emails (683 pages) of one employee, Ginger Glaser, Senior Director, Global Quality & Regulatory Affairs, which did not include emails needing redaction or placement on a privilege log.  *Id.*  Other emails were not produced and the issues respecting the clawback documents were not resolved.

A docket entry indicates that the *Ambroff* case settled on December 5, 2011.  On December 8, 2011, AMS gave notice of its filing a motion to transfer the case to the MDL panel (No. 2:12-cv-331, ECF No. 118).  It arrived in this District on February 9, 2012 (ECF No. 121), and remains pending, although settled.  The *Boatman-Morse* case was also settled, was not transferred to this MDL, and reportedly has been dismissed.  In both cases, counsel for AMS bargained for a provision in the respective settlement agreements that upholds the SPOs and re-affirms the parties' duties.

The lead attorney in *Ambroff*, Amy Eskin, is a member of the Plaintiffs' Executive Committee and is Plaintiffs' Co-Lead Counsel in this MDL.  (Pretrial Order # 4, ECF No. 147.)  Plaintiffs' counsel in the Minnesota and Delaware consolidated state court proceedings against AMS, including Ms. Eskin, promptly began efforts to have access to the clawback documents and depositions from *Ambroff* and *Boatman-Morse*.  AMS has opposed these efforts, but has agreed to produce non-privileged, relevant documents and to produce again the witnesses who were deposed in *Ambroff* and *Boatman-Morse*. (ECF No. 181-3, at 1.)  AMS contends that producing the *Ambroff* and *Boatman-Morse* depositions would violate the SPOs entered in those cases.  *Id.*  The plaintiffs point out that in Delaware, on March 19, 2012, counsel for AMS predicted that when the AMS witnesses have an opportunity to review all the documents produced to the plaintiffs, including the emails, that their answers to deposition questions "may change."  (ECF No. 181-4, at 7.)  In Minnesota, on April 11, 2012, counsel for AMS stated, "our company witnesses will have some different answers.  There's no doubt about it.  When they see all of the information there will be some.  I do not expect a red light green light situation.  But I do expect some nuances to change, because they will have all the documents."  (ECF No. 181-5, at 29.)

3

## The Stipulated Protective Orders

The relevant provisions of the SPO entered in *Ambroff* read as follows:

1.  Until further order of the Court or stipulation of the parties, all information provided to plaintiffs by American Medical Systems, Inc., (hereinafter "AMS"), including . . . depositions of AMS employees, former employees or consultants, documents produced by AMS and information surrounding and concerning the examination of the device at issue designated as "CONFIDENTIAL" by AMS as defined herein shall be subject to this Stipulated Confidentiality Order ("Order").

2.  All discovery received by a party from AMS and designated as confidential shall be viewed only by that party, by their counsel, including paralegal staff, and outside consultants and experts hired or retained by that party for the purpose of assisting in the preparation for trial. * * *

3.  No discovery provided by AMS (confidential or otherwise) shall be used or communicated by any person receiving it for any purpose whatever other than preparation for trial or settlement of this matter.

4.  No discovery furnished by AMS shall be given, shown, made available or otherwise communicated in any way by such counsel to anyone other than: (i) the parties, outside experts and consultants . . ., or (ii) the Court if required in any further proceeding herein, except as permitted by stipulation of the parties or any further order of the Court.

5.  There shall be no reproduction whatsoever of such discovery except that, as required in the litigation, copies, excerpts or summaries may be shown or given to those authorized to receive discovery materials pursuant to this Order.

6.  Information subject to this Order that is required to be filed with the Court, or which is included in any pleading, motion or other document filed with the Court, shall be filed under seal with the Court Clerk and shall be available for inspection only by the Court and by those persons authorized by this Order to receive discovered information.

7.  AMS, in producing any document in this action which contains sensitive information of a non-public nature, may designate such document as confidential by marking the document "CONFIDENTIAL."

8.  In responding to written discovery, AMS may designate any portion of its response which contains sensitive information of a non-public nature as confidential by marking the discovery "CONFIDENTIAL."

9.  In any deposition AMS may designate as confidential any testimony deemed to be sensitive information of a non-public nature . . .. * * *

10.  If counsel for any party objects to any designation by AMS as confidential . . ..

11.  Information designated as confidential may be referred to by any party in notices, motions, briefs, or any other pleadings, may be used in depositions and may be marked as deposition exhibits in this action. However, no such information shall be used for any of these purposes

4

unless it, or the portion where it is revealed, is appropriately marked and, if filed, is separately filed under seal with the Court.

12.  If, at the time of trial, . . .

13.  On final termination of this action, including all appeals, counsel for each party shall be responsible for returning to AMS the original and all copies of all documents which contain confidential information provided by AMS during the course of discovery . . .. Despite final termination of this action, this Order shall continue to apply to all discovery designated as confidential.

14.  Notwithstanding the provisions hereof, each party is free to disclose information furnished by that party, including confidential information, and such shall not be deemed a waiver of the protections hereof, including confidentiality.

15.  Nothing in this Order shall prevent any party from seeking a modification of this Order or objecting to discovery which it believes to be otherwise improper.

(ECF No. 181-1, at 1-4.)  The SPO in *Boatman-Morse* is identical to the *Ambroff* SPO in all major respects.  (ECF No. 181-2, at 1-5.)

These SPOs are so-called "umbrella" orders, entered in advance of discovery and applied broadly.  *See* Wright, Miller, Kane & Marcus, 8A *Federal Practice & Procedure* § 2044.1 (3d ed.) ("Wright & Miller").  These SPOs were obviously authored by AMS because they are nearly identical and virtually all the provisions concern the use of material produced by AMS, and not by the plaintiff.  Pretrial Order One entered in this MDL on February 29, 2012, provides that "[a]ny orders, including protective orders, previously entered by this court or any transferor court, shall remain in full effect *unless modified by this court*."  (ECF No. 8, at 5) (emphasis added).  The *Ambroff* SPO therefore remains in full effect unless modified in this case.  The *Boatman-Morse* case was not transferred.

The *Ambroff* SPO differs from the SPO entered in a companion MDL pending in this District (*In re C.R. Bard, Inc. Pelvic Repair System Products Liability Litigation*, No. 2:09-md-2187, ECF No. 54).  The judicial officers presiding over this MDL also

preside over the *Bard* MDL and have stated on the record that discovery orders should be similar to those entered in *Bard*. A few examples illustrate the important differences between the *Ambroff* SPO and the *Bard* SPO. The *Ambroff* SPO defines "CONFIDENTIAL" as "sensitive information of a non-public nature." The *Bard* SPO defines "CONFIDENTIAL" as "information that qualifies for protection pursuant to Fed. R. Civ. P. 26(c), specifically information that is trade secret or other confidential research, development, or commercial information, and materials that are deemed confidential under Federal Drug Administration ("FDA") regulations and Health Insurance Portability and Accountability Act ("HIPAA") statutes and/or regulations." The *Ambroff* SPO requires attorneys to file confidential documents under seal. The *Bard* SPO provides that if a party wishes to use confidential information as an exhibit or in testimony, the party must attempt to reach agreement on removing the designation and, if that fails, file a motion to seal. Importantly, the proponent of continued confidentiality has the burden of persuasion that the document or material should be withheld from the public record in accordance with this District's Local Rule 26.4, our Administrative Procedures, and controlling precedent. In other words, judicial officers, not attorneys, decide which documents or testimony will be sealed from public view. To highlight the importance of the conflicting definitions of "CONFIDENTIAL," the plaintiffs state that AMS marked *every* document produced and *every* page of *every* deposition in *Ambroff* as "CONFIDENTIAL," (ECF No. 181, at 4), but this may not be completely accurate. The court is confident that there was over-designation by AMS; the court discourages such practice.

## Issues Presented

1.    Should AMS be compelled to produce to the MDL depository all the documents which it produced in *Ambroff*, including those subject to clawback, and identify them as *Ambroff* documents?

2.  Should AMS be compelled to produce to the MDL depository the transcripts of all the depositions taken in *Ambroff* and *Boatman-Morse*?

3.  Should the *Ambroff* SPO and the *Boatman-Morse* SPO be modified?  If so, in what manner?

These three formal statements of issues emanate from the apparent purpose behind the plaintiffs' motion: sensing the opportunity for impeachment, they want to determine whether AMS mislead the plaintiffs in *Ambroff* and *Boatman-Morse* when AMS failed to produce relevant documents and when its employees and corporate representatives testified after reviewing an incomplete set of documents.   AMS is attempting to avoid production of an exact replica of the documents it produced (or otherwise specification of those which it failed to disclose), prevent disclosure and use of documents as to which it has pursued clawback, and limit impeachment of its witnesses with their prior testimony.

AMS has acknowledged its responsibility to produce relevant, non-privileged documents and things to the MDL depository and to produce its employees and corporate representatives as witnesses.

## Positions of the Parties

The plaintiffs contend that the SPOs do not limit AMS in any way with respect to its own documents and depositions.   (ECF No. 181, at 7.)   They argue that AMS's

position that it can withhold its Rule 30(b)(6) deposition transcripts is groundless. *Id.* at 10. If the court upholds the *Ambroff* SPO to limit the plaintiffs' access, they request modification of the SPO. *Id.* at 15.

AMS responds that the plaintiffs' request violates the SPOs, and asserts that courts routinely honor and enforce pre-existing protective orders that limit the use of deposition transcripts to use in the prior case only. (ECF No. 193 at 5, 10.) It argues that modification of the SPOs is not warranted. *Id.* at 13. Finally, AMS contends that the *Ambroff* and *Boatman-Morse* attorneys expressly bargained away any potential, future right to use this discovery in other pelvic mesh cases. *Id.* at 17.

In reply, the plaintiffs argue that AMS is making a "desperate and invalid effort to preclude relevant and discoverable evidence in this MDL." (ECF No. 196, at 3.) They contend that the SPOs do not need to be modified because only the plaintiffs, not AMS, are prohibited from disclosure of the documents and depositions. *Id.* at 6. If the SPOs do need to be modified, the plaintiffs assert that AMS cannot satisfy its burden of proving specific harm or prejudice resulting from the modification requested. *Id.* at 9. Finally, the plaintiffs state that AMS's reliance on the settlement agreements in *Ambroff* and *Boatman-Morse* is misplaced. *Id.* at 12.

AMS's sur-reply concedes that the SPOs do not preclude the discovery of relevant company documents in this MDL. (ECF No. at 1.) It contends that the SPOs do preclude the reproduction of an exact replica of the documents and materials from *Ambroff* and *Boatman-Morse*. *Id.* at 1-2. AMS argues that "modification of a protective order's non-sharing provision is only granted in instances where relevant information is otherwise unavailable to collateral litigants by virtue of the protective order." *Id.* at 2.

AMS asserts that the plaintiffs must show "extraordinary circumstances" to justify modification of the SPOs. *Id.* at 2-4.

## Analysis

"Umbrella" or "blanket" protective orders are widely used in multi-district and other complex litigation to "expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication." *Manual for Complex Litigation* § 11.432 (4th ed. 2010). Typically they are entered by stipulation in advance of discovery, before the parties focus on the specific issues, and are necessarily written broadly. 8A Wright & Miller, § 2044.1, refers to them as "flexible devices, subject to the district court's informed discretion." Umbrella protective orders have their origin in Rule 26(c), a foundation which is often ignored by litigants.

> An umbrella protective order is
>
> more in the nature of an agreement between the parties as to how discovery that one party seeks, and the other resists because of confidentiality concerns, will be handled without court intervention. Such orders . . . do not reflect any conclusion by the court regarding the appropriateness of designating particular documents as confidential, pursuant to Fed. R. Civ. P. 26(c)(7). Further, as in this case, such agreements frequently are one sided, imposing all the obligations on the party seeking discovery, and affording all the protections to the party that initially resisted it.

*Tucker v. Ohtsu Tire & Rubber Co.,* 191 F.R.D. 495, 498-99 (D. Md. 2000).

The court is presented with AMS having marked as "CONFIDENTIAL" every document and nearly every page of every deposition in the *Ambroff* and *Boatman-Morse* cases. The definition of "CONFIDENTIAL" as "sensitive information of a non-public nature," is itself contrary to Rule 26(c)(1), which permits, "for good cause," protective orders which require that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a

specified way." The SPO makes clear in ¶¶ 7, 8 and 9 that it was AMS's decision whether to designate material as "CONFIDENTIAL." With the discretion to make the designation comes the duty to justify the designation; the court has heard none. While stipulated protective orders can have a lubricating effect by encouraging the flow of discovery material between the parties, over-designation of material as "CONFIDENTIAL" tends to gum up the works.

It was the responsibility of AMS to designate discovery material as "CONFIDENTIAL" *only* upon a good faith belief that the material contained "sensitive information of a non-public nature." This standard cannot be interpreted to give AMS permission to freely stamp all documents as "CONFIDENTIAL" without purposeful and thorough inquiry. *See Minter v. Wells Fargo Bank, N.A.*, Nos. WMN-07-3442, WMN-08-1642, 2010 WL 5418910, at *2 (D. Md. Dec. 23, 2010); *Mt. Hawley Ins. Co. v. Felman Production, Inc.*, No. 3:09-cv-481, 2010 WL 1254682, at *2 (S.D. W. Va. Mar. 25, 2010).

The court also is presented with AMS's admission that it did not produce all of its documents in compliance with discovery rules. The testimony of AMS's witnesses will change, but no one knows in what respect and to what degree. Ideally this situation should have been addressed in the Northern District of California or in Arizona, but settlement eclipsed those efforts. While counsel for AMS deserves credit for her admissions to the plaintiffs and the federal and state court judges that AMS had not produced all the documents, or reviewed all the documents with its witnesses prior to their testimony, this judicial officer is troubled by her statements to courts in Delaware and Minnesota to the effect that there is a different standard of discovery if there are only a few cases relating to a product versus a mass tort situation and 500 cases. (ECF

No. 181-4, at 7; ECF No. 181-5, at 30.)  Neither the Rules nor the oath make such a distinction.  A party must face the consequences of failing to comply with the Rules, no matter what the size or number of cases involved.  Every witness must face cross-examination in the search for truth.

The Wright & Miller treatise provides guidance on factors to be considered when a litigant seeks to avoid or modify a protective order.

> When access is requested to material covered by a protective order for use in other litigation, the court is confronted with a choice between two concerns grounded in Rule 1.  One is that protective orders facilitate the speedy and inexpensive disposition of litigation by avoiding discovery disputes.  A second is that requiring litigants to redo discovery is wasteful and delays litigation.

8A Wright & Miller § 2044.1.  A third factor is the ground asserted for access or modification; that is, whether the material is relevant to the litigation.  *Id.*  A fourth consideration is whether the material was produced in reliance on the protective order. *Id.*  Finally, the court should consider whether that reliance is reasonable, particularly if other related litigation is already pending or threatened.  *Id.*  The court will apply the factors which are relevant and will address the positions of the parties.

1.  The *Ambroff* documents, including those subject to clawback.

It is important to keep in mind that the plaintiffs are asking AMS, not the *Ambroff* plaintiffs, to produce the *Ambroff* documents.  There is no question that the documents are relevant and producible pursuant to Rule 34.  There is nothing in the *Ambroff* SPO that prevents AMS from disclosing to the MDL plaintiffs the documents which it produced to the *Ambroff* plaintiffs.  Paragraph 14 of the SPO explicitly states that "each party is free to disclose information furnished by that party, including confidential information, and such shall not be deemed a waiver of the protections

11

hereof, including confidentiality."  AMS attempts to assert that ¶ 14 "merely protects a party against waiver of confidentiality in the event of an inadvertent disclosure."  (ECF No. 193, at 6.)  The court is not persuaded in the slightest.  Paragraph 14 merely makes the obvious point that AMS's production of documents in one case does not prevent it from producing documents in another case, and AMS does not thereby waive confidentiality.  In *Morton Internat'l, Inc. v. Atochem N.A., Inc.,* No. 87-cv-60 CMW, 1990 WL 299920, at *2 (D. Del. Sept. 18, 1990), and *Goeggel v. Barney-Jewish Hosp.,* No. 4:96-cv-2208 JCH, 2006 WL 2990496, at *4 (E.D. Mo. Oct. 19, 2006), the courts reviewed protective orders which did not restrict dissemination by the party that originally controlled the evidence, and concluded that such disclosure was not precluded by the protective orders.  In *Tucker*, 191 F.R.D. at 501, and *Abel v. Mylan, Inc.*, No. 09-cv-650-CVE-PJC, 2010 WL 3910141 *4 (N.D. Okla. Oct. 4, 2010), production of documents by the originator of the documents was ordered, with suitable protection for confidential documents.

AMS has agreed to produce documents which include the documents produced in *Ambroff*, but it does not want to identify the documents which it produced in *Ambroff*.  In other words, AMS does not wish to provide a trail which the MDL plaintiffs may follow to determine whether AMS attempted to mislead the *Ambroff* plaintiffs or otherwise engaged in discovery abuse when AMS failed to produce all of its material.  If the MDL plaintiffs are not told which documents were produced to the *Ambroff* plaintiffs, they will not be able to identify the *Ambroff* documents for themselves.

Production of documents by a corporation and its representatives implicates the credibility of the corporation's witnesses through Rules 30(b)(6) and 34, and the credibility of the corporation's attorneys through Rule 26(g).  AMS's employees and

corporate representatives will be re-deposed in this MDL; surely they will be questioned concerning their review of documents and possible changes in their testimony.

At this point, no one knows whether AMS's failure to produce documents in *Ambroff* was intentional or negligent or attributable to lack of time. Whatever the reason, the plaintiffs should be given an opportunity to pursue the matter to determine whether the omitted production was material. "Unless otherwise stipulated or ordered by the court," a party produces documents "as they are kept in the usual course of business" or organized and labeled to correspond to the categories in the request. Fed. R. Civ. P. 34(b)(2)(E)(i). It is hereby **ORDERED** that AMS will produce its relevant, non-privileged documents to the MDL depository with a symbol or other identifying mark as to those documents which were produced in *Ambroff* and with the date of production in *Ambroff*. The court notes that AMS has already produced the *Ambroff* documents in Delaware, except for those subject to clawback. (ECF No. 181-4, at 16.)

The parties have apparently not resolved issues relating to documents as to which AMS has attempted clawback. The purpose of a clawback provision is to place the parties in the positions they would have been in, but for the inadvertent or mistaken production of a document subject to a claim of privilege. It makes no sense to require AMS to produce documents as to which it claims a privilege and then attempt to claw them back again. It is further **ORDERED** that AMS shall produce and serve a privilege log consistent with the requirements of Rule 26(b)(5), which log shall include a symbol or other identifying mark as to those documents which were produced in *Ambroff* and were subject to clawback.

2.  The *Ambroff* and *Boatman-Morse* depositions.

The AMS employees and corporate representatives who were deposed in *Ambroff* and *Boatman-Morse* will be re-deposed in this MDL, pursuant to a deposition protocol which has not been finalized.  No one knows whether these individuals will change their deposition testimony in a material manner, as a result of reviewing all of the pertinent documents.  The prior depositions are certainly lengthy; it is not humanly possible for either the deponents or the examining attorneys to remember the exact questions asked and the exact answers given.  Virtually every page of every deposition was designated as "CONFIDENTIAL" by AMS.  AMS has decided to remove the "CONFIDENTIAL" designation from its expert witnesses' depositions, but not as to any others, and relies on the non-sharing provisions of the *Ambroff* and *Boatman-Morse* SPOs.

The plaintiffs assert that the SPOs do not limit AMS in any way with respect to producing the depositions of its employees.  (ECF No. 181, at 7; ECF No. 196, at 3, 6.)  AMS disagrees and contends that the SPO limits the use of the depositions to use in *Ambroff* or *Boatman-Morse* only.  (ECF No. 193, at 5, 10.)  Close examination of the SPOs (found at ECF No. 181-1 and 181-2) is warranted.

Paragraph 1 of the SPOs provides that information provided by AMS to the plaintiffs, including depositions of AMS employees, is subject to the SPO.  Paragraph 2 restricts those recipients who may view the discovery.  Paragraph 3 governs the use of the discovery by the recipient.  Paragraph 4 prevents a recipient from giving, showing, making available, or communicating the discovery except as stated.  Paragraph 5 prohibits reproduction of the discovery except to and among recipients.  Paragraphs 6 and 11 require filing discovery and confidential information under seal. Paragraphs 7, 8, and 9 give AMS the right to designate sensitive information of a non-public nature as

"CONFIDENTIAL."   Paragraph 10 addresses challenges to a "CONFIDENTIAL" designation.   Paragraph 12 concerns the use of confidential information at trial. Paragraph 13 requires recipients to return discovery documents to AMS.  Paragraph 14, as noted above, permits "each party . . . to disclose information furnished by that party, including confidential information, and such shall not be deemed a waiver of the protections hereof, including confidentiality."  Paragraph 15 permits "any party" to seek a modification of the SPO or to object "to discovery which it believes to be otherwise improper."

Despite AMS's assertion that the plaintiffs' request "violates" the SPOs, AMS has not pointed to a single paragraph or provision in the SPOs which prohibits AMS from providing the *Ambroff* and *Boatman-Morse* depositions to the MDL depository.  The court, upon repeated review, finds no paragraph or provision in the SPOs which AMS would violate if it were to produce the depositions to the MDL depository.   The depositions are clearly relevant and they are not subject to a claim of privilege.  The court finds that paragraph 14 authorizes AMS to produce the depositions to the MDL depository while maintaining the claimed confidentiality.  AMS suggests that paragraph 3, the non-sharing provision, must be read *in pari materia* with paragraph 14.  Again, the court is not persuaded by this contention.  Paragraph 3 prohibits *a recipient* from using discovery for a purpose other than trial preparation or settlement; it does not prohibit AMS from using the discovery for any purpose at all.

There are several good reasons to require AMS to produce the *Ambroff* and *Boatman-Morse* depositions to the MDL depository.  First, without the depositions, the plaintiffs will not be able to determine if AMS employees and corporate representatives have altered their testimony in a material respect as a result of their review of additional

documents.  The court hastens to note that it is unclear whether the review of additional documents will result in testimony that is more or less favorable to the plaintiffs or AMS.  All we know is that it will be different, perhaps inconsequentially.

Second, it was AMS which admits that it failed to comply with the requirements of the discovery rules and which over-designated material as "CONFIDENTIAL."  One consequence of careless or abusive discovery practices is being repeatedly reminded of the deficiencies.

Third, production of the depositions now resolves an issue which would otherwise arise with respect to trial; that is, whether Rule 32 or Rule 804 entitles the plaintiffs to discover the witnesses' prior statements.  This reason is particularly persuasive with respect to AMS's Rule 30(b)(6) witnesses.

Fourth, if the depositions are not produced now, the MDL depositions will be unreasonably prolonged as the plaintiffs' counsel attempt to elicit testimony from AMS's witnesses as to what their prior testimony was and how it is different now.  Of course, the plaintiffs may make the mistake of unreasonably prolonging depositions by confronting witnesses with non-material differences in their testimony.  If so, the court expects that AMS will bring the matter to the court's attention.  Counsel should maintain their focus on the elements of their causes of action, not minor differences in testimony.

Fifth, the production of the depositions eliminates the plaintiffs' concern that material differences in testimony are being concealed.  As noted during pretrial hearings, these pelvic mesh MDLs are a matter of considerable public interest; the bellwether trials should provide a complete picture of the products and their effects on women without the nagging worry that important facts are not known.

Sixth, the cases cited by AMS (ECF No. 193, at 5) do not address the situation of an SPO which does not prohibit dissemination of discovery material by the producer of that material.  In *State Automobile Mut. Ins. Co. v. Davis*, No. 2:06-cv-630, 2007 WL 2670262, at *1 (S.D. W. Va. Sept. 7, 2007), the documents sought were plainly protected by the order.  Similarly, *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 662 F. Supp.2d 375 (D. Del. 2009), and the other cases cited by AMS, considered materials which were not available for dissemination.  Principles of comity, respect for preexisting judicial orders, and preservation of the reliability of protective orders simply do not apply if the production of discovery material does not violate another court's protective order.

Seventh, given the strong likelihood that AMS authored the SPOs, it is appropriate that ambiguities, if any, be construed against AMS.  The court believes that the SPOs are straightforward and easy for a lawyer to understand; nonetheless, if others believe that ¶ 14 is unclear, it should be construed in the plaintiffs' favor.

Finally, AMS has not persuasively shown that it will suffer prejudice or harm (other than that which it has inflicted on itself) as a result of its production to the MDL depository of the *Ambroff* and *Boatman-Morse* depositions.  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.  *Minter v. Wells Fargo Bank, N.A.*, 2010 WL 5418910 (D. Md. Dec. 23, 2010) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)).

It is hereby **ORDERED** that AMS shall promptly produce to the MDL depository true copies of the depositions of its employees, corporate representatives and expert witnesses, which depositions were taken in *Ambroff* and *Boatman-Morse*.

### 3. Modification of the SPOs.

The court has found that requiring AMS to produce documents and depositions in the *Ambroff* and *Boatman-Morse* cases would not violate the SPOs entered in those cases; thus modification of the SPOs is not needed.

AMS argues that it has relied on the provisions of the SPO and that it bargained for adherence to the SPO when it settled *Ambroff* and *Boatman-Morse*. The court notes that AMS included a provision in both SPOs (¶ 15) that "any party" could seek a modification of the SPO. The Wright & Miller treatise comments that "an 'umbrella' order allowing large amounts of information to be designated as confidential is likely to be found to provide a less forceful basis for reliance than a more particularized order premised on a showing to the court of confidentiality. * * * Similarly, reliance is less likely to be found if other related litigation is already pending or threatened." 8A Wright & Miller, § 2044.1.

The court has already pointed out significant differences between the *Ambroff* SPO and the *Bard* SPO. While it is not necessary to modify the *Ambroff* SPO in connection with the instant discovery dispute, the court expects the MDL parties to restrict the definition of material which is confidential and to comply with Local Rule 26.4 with respect to sealing of confidential material.

It is hereby **ORDERED** that the plaintiffs' Motion to Produce Documents and Depositions (ECF No. 181) is **GRANTED** to the extent set forth above, and the plaintiffs' alternative request to modify the Stipulated Protective Orders is **DENIED** without prejudice.

The parties will bear their own costs.

18

The court **DIRECTS** the Clerk to file a copy of this Memorandum Opinion and Pretrial Order # 12 in 2:12-md-2325, and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:12-cv-02551.  In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint.  In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer.  It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court.  The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER:  July 5, 2012

Mary E. Stanley
United States Magistrate Judge

19