IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:  AMERICAN MEDICAL SYSTEMS, INC.
        PELVIC REPAIR SYSTEMS
          PRODUCT LIABILITY LITIGATION                    MDL No. 2325

-----------------------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

**PRETRIAL ORDER # 63**
(Defendant America Medical System Inc.'s Motion for Protective Order
regarding the depositions of Diane Sahr and Jing Li)

Defendant American Medical Systems, Inc. ("AMS") requests a protective order prohibiting Plaintiffs from taking the depositions of two former employees, Diane Sahr and Jing Li, on the basis that these depositions are cumulative, duplicative, and unnecessarily burdensome. (ECF Nos. 581, 582). Plaintiffs have filed a memorandum in opposition of the motion, (ECF No. 641), and the time for filing a reply has expired. For the reasons that follow, the Court **DENIES** AMS's motion for protective order.

I.      **The Parties' Positions**

AMS argues that the depositions of Ms. Sahr and Ms. Li are duplicative and cumulative for two reasons. First, Plaintiffs have already scheduled the depositions of multiple employees from AMS's Clinical Research Department, which is the same department that previously housed Ms. Sahr and Ms. Li. AMS indicates that the other employees can provide "testimony spanning the entire period in controversy in this litigation for each of the products," rendering the depositions of Ms. Sahr and Ms. Li

unnecessary. (ECF No. 582 at 3). Next, AMS contends that Diane Sahr has already been deposed on two occasions by Plaintiffs' Lead Counsel, once in the *Ambroff* case and once in the *Boatman-Morse* case.[1] Because these cases involved the same subject matter at issue in this multidistrict litigation ("MDL"), Ms. Sahr would be forced to answer the same questions for the third time.

In addition, AMS argues that the depositions of Ms. Sahr and Ms. Li are overly burdensome given the heavy demands of their current employment positions and the limited value of their testimony. Both Ms. Sahr and Ms. Li work at small start-up companies where they oversee clinical trials. Both work long hours with little time to spare for a deposition. AMS states that Plaintiffs are already in possession of Ms. Sahr's testimony from the prior depositions, and she is not expected to have new information if deposed again. Ms. Li was not previously deposed, but she was never in a management position at AMS and had only minor involvement in mesh products. Accordingly, in AMS's view, any information known to Ms. Li could be obtained from one of the other employees scheduled for deposition.

In response, Plaintiffs contend that the depositions are not cumulative or duplicative because few fact witness depositions have been taken. Plaintiffs emphasize that Ms. Sahr has never been deposed in this litigation, and Ms. Li has never been deposed. Although Ms. Sahr testified in other related litigation, her prior depositions do not preclude her deposition in this MDL. Moreover, since the taking of Ms. Sahr's depositions, AMS has produced additional documents about which Ms. Sahr was not questioned. In Plaintiffs' view, the witnesses have personal knowledge of relevant

---

[1] *Ambroff v. AMS*, Case No. 3:08-04289 (N.D. Cal); *Boatman-Morse v. AMS*, Case No. C20088360 (Sup. Ct. Pima Cty., Arizona). (ECF No. 181 at 2). According to AMS, Ms. Sahr was deposed in *Ambroff* in July 2010 and in *Boatman-Morse* in July 2011. Both cases subsequently settled; although thereafter the *Ambroff* case was transferred to this MDL.

information; consequently, their testimony should not be prohibited simply because some of what they know may overlap with information known to other employees. As to the burdensomeness argument, Plaintiffs contend that courts routinely reject motions for protective orders that rest on claims of busy work schedules or complicated personal lives. However, to reduce the inconvenience, Plaintiffs indicate that they will work with the witnesses to schedule the depositions at the least disruptive times.

In addition to the arguments of counsel, the undersigned has reviewed several affidavits. According to an affidavit prepared by Ms. Sahr, she was employed as Director of Clinical Affairs at AMS from April 2007 through January 2010. (ECF No. 581-1 at 5-6). Since leaving that position, she has been deposed twice in cases involving pelvic mesh. In both instances, the deposing counsel was Amy Eskin, who is Lead Counsel in this MDL. Ms. Sahr contends that she has not acquired any new information since giving her previous depositions and does not expect to offer different testimony if deposed again. Ms. Sahr advises that she works for a small company and is currently in the middle of several clinical trials that require her to work long hours, including weekends, and to travel frequently. Ms. Sahr's affidavit is supported by an affidavit from her employer, who states that the company is presently in a critical time period for clinical testing and is hard-pressed to spare Ms. Sahr for a deposition. (ECF No. 581-1 at 8-9).

Ms. Li also submits an affidavit in which she states that she was employed as a Clinical Project Leader at AMS between October 2007 and April 2010. (ECF No. 581-1 at 11-12). During the summer of 2009, Ms. Li worked on mesh products. The remainder of her time at AMS was spent working on a non-mesh product and performing medical literature reviews. Ms. Li claims that she was not a managerial employee at AMS, her

knowledge of the relevant issues is limited, and other AMS employees would be better able to supply Plaintiffs with detailed information regarding the mesh products. Ms. Li indicates that her current employer is a small corporation, and she is the only employee who can perform the functions of her position. Thus, her presence at a deposition would cause a significant hardship to her employer. Ms. Li adds that she is the primary caretaker of two young children and simply has no spare time to prepare for and attend a deposition.

## II. Discussion

Courts generally regard motions that seek to prevent the taking of a deposition with disfavor. *Minter v. Wells Fargo Bank, N.A.,* 258 F.R.D. 118, 125 (D.Md. 2009) (citing *Static Control Components, Inc. v. Darkprint Imaging,* 201 F.R.D. 431, 434 (M.D.N.C. 2001) ("protective orders which totally prohibit a deposition should rarely be granted absent extraordinary circumstances")). As a result, the standard required for granting such an order is high. *Medlin v. Andrew,* 113 F.R.D. 650, 652-53 (M.D.N.C. 1987) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error") (quoting *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir. 1979). Nonetheless, for good cause shown, a court may forbid, limit the scope of, or prescribe a discovery method other than a deposition in order to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. Rule Civ. Pro. 26(c)(1). The duty to demonstrate good cause rests with the party seeking to prevent or limit the deposition. *Webb v. Green Tree Servicing, LLC,* 283 F.R.D. 276 (D.Md. 2012) (citing *Minter,* 258 F.R.D. at 124).

AMS initially argues that Ms. Sahr's deposition should not be taken because she has already been deposed twice on the same subject matter. The court finds this argument unconvincing given the deposition protocol that governs this MDL. (ECF No. 469). The protocol explicitly states that "any deposition taken in a case not part of this MDL proceeding and not cross-noticed in this MDL proceeding shall **not** be considered a first deposition." (emphasis added). Thus, when drafting the deposition protocol, the parties recognized that some witnesses were previously deposed in similar actions, yet the parties agreed not to count those depositions in the MDL. Neither of Ms. Sahr's depositions were taken in the MDL. Accordingly, under the deposition protocol, Ms. Sahr is being asked to sit for her first deposition, and AMS's argument must be judged in that light.

This interpretation of the protocol is buttressed by the history leading up to its February 2013 entry. Seven months earlier, in July 2012, Magistrate Judge Stanley considered a motion by Plaintiffs to compel AMS to produce documents and depositions from the *Ambroff* and *Boatman-Morse* cases. As part of the argument surrounding this motion, Plaintiffs advised Judge Stanley that they wanted the documents from the prior cases labeled as having been produced in those cases. They explained that one year after the depositions of AMS's employees in the *Ambroff* case, AMS found and produced additional documents that were not available when the employees were deposed. Accordingly, with proper labeling, Plaintiffs would be able to track changes in the employees' testimony based upon the newly produced documents. (ECF No. 204). The argument of counsel and the language of Judge Stanley's subsequent order clearly demonstrate that all concerned expected the same AMS employees to be deposed again; if for no other reason, because of the *post facto* discovery of relevant documents. *Id.* at

16. The expectation that there would be "repeat" depositions is further confirmed in the negotiated deposition protocol. To address the issue of duplication, the parties included the following limitation: "When taking the deposition of a witness previously deposed in a State Court proceeding, MDL counsel will make a good faith effort to avoid duplicate examination." (ECF No. 469 at 2-3).[2] Therefore, to the extent that AMS bases its motion on the number of times Ms. Sahr's has been deposed, that ground is unavailing. Thus, the court must assess whether AMS otherwise demonstrates good cause for a protective order.

In that regard, AMS argues that Plaintiffs have scheduled other witnesses for deposition who can provide all of the information sought from Ms. Sahr and Ms. Li without experiencing the same level of inconvenience. Considering that few fact witnesses have been deposed and the court has no transcripts before it upon which to assess the potential for duplicative or cumulative testimony, the court has no basis upon which to grant a protective order. AMS must show particular or specific demonstrations of fact to support its motion, "as distinguished from stereotyped and conclusory statements." *Minter,* 258 F.R.D. at 124. AMS has not met its burden. This litigation involves multiple mesh products that were developed, manufactured, and marketed over a span of years. Plaintiffs indicate that the eight witnesses they have selected for deposition from the Clinical Research Department had different responsibilities, held different positions, or were at AMS at different times. As for Ms. Sahr and Ms. Li, Plaintiffs represent that these witnesses were mentioned in tens of thousands of relevant documents. Ms. Sahr held an oversight position in regard to clinical studies, human

---

[2] Although *Ambroff* was not a State court proceeding, this clause nonetheless envisions that witnesses may be subject to more than one deposition.

trials, and standard operating procedures. Ms. Li allegedly authored several clinical evidence documents. AMS does not refute these representations outright. Instead, AMS contends that other witnesses "overlap" with Ms. Sahr and Ms. Li in time frames and responsibilities and can testify regarding all of the products over all of the years. Nevertheless, while these deponents may have worked in the same department as Ms. Sahr and Ms. Li and may know much of the same information as they know, this alone does not constitute extraordinary circumstances that would justify prohibiting the depositions of Ms. Sahr and Ms. Li.

AMS also emphasizes that Plaintiffs possess and can use in this litigation substantial testimony previously provided by Ms. Sahr. As Ms. Sahr has no plan to change her prior statements, Plaintiffs will inevitably generate a duplicate deposition. This argument does not provide good cause for a protective order because it disregards two important facts. First, documents were produced by AMS after Ms. Sahr's depositions that may lead to supplementation of her prior testimony. Second, the deposition protocol requires Plaintiffs to make a good faith effort to avoid duplicate examination. In light of the admonition contained in the governing protocol, much of AMS's concern over duplication should be alleviated.

AMS's argument that Ms. Sahr and Ms. Li should be excused from testimony due to their arduous work schedules and personal responsibilities is equally unpersuasive. While Ms. Sahr and Ms. Li are no doubt extremely busy, most professionals today are forced to contend with long days at the office and hectic personal lives. As Plaintiffs point out, the everyday demands of life seldom provide an excuse to avoid sitting for a deposition. *See Johnson v. Jung,* 242 F.R.D. 481 N.D.Ill. 2007). In *Johnson,* the court considered a similar "I'm too busy" argument and rejected it, observing that even the

President of the United States "is not immune from responding to reasonably scheduled discovery." *Id.* at 486 (citing *Clinton v. Jones,* 520 U.S. 681, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997)). Plaintiffs have offered to schedule the depositions on a date most convenient for the witnesses, even at night or on the weekends. Thus, AMS fails to meet the high standard required for issuance of a protective order prohibiting the depositions.

The court **DIRECTS** the Clerk to file a copy of this order in 2:12-md-2325 and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:13-cv-11170. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at **http://www.wvsd.uscourts.gov**.

**ENTERED:** May 14, 2013.

_____
Cheryl A. Eifert
United States Magistrate Judge