IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: AMERICAN MEDICAL SYSTEMS, INC.
       PELVIC REPAIR SYSTEMS
       PRODUCT LIABILITY LITIGATION       MDL No. 2325

----------------------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

PRETRIAL ORDER #64
(AMS's Motion for Permission to Meet with Dr. Moore)

Defendant American Medical Systems, Inc. ("AMS") moves this court for an order permitting AMS to meet *ex parte* with Dr. Robert Moore prior to his deposition scheduled on May 29, 2013, (ECF No. 643, 657), and seeks an expedited ruling on its motion. (ECF No. 645). Plaintiffs have responded to the motion, and AMS has filed supporting and reply memoranda. (ECF Nos. 644, 658, 664, 668). Consequently, the issue before the court has been fully briefed and is ready for resolution. For the reasons that follow, the court **GRANTS** AMS's request for an expedited resolution of the motion and further **GRANTS** AMS's motion and amended motion for permission to meet with Dr. Moore.

I    **Relevant Facts**

This multidistrict litigation ("MDL") involves the design, development, manufacturing, and marketing by AMS of mesh products used to treat pelvic organ prolapse and stress urinary incontinence. At this stage of the litigation, the parties are completing case-specific discovery in thirty individual matters, fifteen selected by

- 1 -

Plaintiffs and the remaining fifteen selected by AMS. Dr. Robert Moore, a Georgia surgeon, has been scheduled for deposition in this MDL to testify about his treatment of Dixie Money, a Georgia resident whose case was selected for specific discovery by Plaintiffs. In 2011, Dr. Moore performed surgery on Ms. Money to remove the pelvic mesh that forms the basis of her complaint.

In addition to treating Ms. Money, Dr. Moore has a long-standing relationship with AMS as a physician consultant on its mesh products. According to AMS, Dr. Moore has been involved in many aspects of its product development, clinical trials, and physician training. Plaintiffs likewise acknowledge that Dr. Moore is one of AMS's top preceptors and medical advisors whose relationship with AMS dates back at least a decade and continues into the present. In view of this history, AMS anticipates that Plaintiffs will question Dr. Moore regarding his involvement with AMS's mesh products. Therefore, AMS seeks permission from the court to prepare Dr. Moore for his testimony on this subject matter. Plaintiffs do not dispute their intent to question Dr. Moore about his consulting services with AMS; however, they oppose AMS's request for an *ex parte* meeting with Dr. Moore because he is Ms. Money's treating physician.

## II.     Positions of the Parties

AMS contends that it should be permitted to meet with Dr. Moore for two reasons. First, AMS has the right to conduct private witness interviews under both federal and state law. Second, AMS does not intend to discuss the care and treatment of Ms. Money with Dr. Moore. Instead, the purpose of the meeting is to prepare Dr. Moore for questions regarding his consulting relationship with AMS. AMS argues that it is fundamentally unfair to allow the Plaintiff to conduct a pre-deposition meeting with Dr. Moore to discuss her health care, yet disallow Defendant the right to meet with him on

issues that directly pertain to Defendant's business operations.

In response, Plaintiffs assert the physician-patient privilege and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), emphasizing that since the 2003 implementation of HIPAA's Privacy Rule, the trend in the law has been to forbid or severely limit *ex parte* communications between defense counsel and a plaintiff's health care providers. Plaintiffs argue further that AMS provides no legitimate reason for meeting with Dr. Moore; particularly, as AMS already knows all there is to know about Dr. Moore's involvement with AMS and its products. In Plaintiffs' view, AMS's request to meet with Dr. Moore is nothing more than a desire to "get behind closed doors" with him and ensure that he will say what AMS wants him to say.

### III. Discussion

Witness interviews, conducted in private, are routine components of nearly every attorney's case preparation. As a general rule, in the absence of a specific prohibition, potential witnesses are fair game for informal discovery by either side of a pending action. *International Bus. Mach. Corp v. Edelstein,* 526 F.2d 37, 42 (2d Cir. 1975). Here, Plaintiffs argue that Dr. Moore's role as a treating physician renders him off-limits to AMS for any purpose. AMS, on the other hand, argues that while it may not meet with Dr. Moore to discuss his patient care, it is not precluded from speaking with him about his role as an AMS preceptor and consultant. The court agrees with AMS.

The cases cited by Plaintiffs certainly support their position that a defense attorney should not engage in *ex parte* communications with a plaintiff's treating physician. Nonetheless, these cases do not examine the particular question before this court. In each of the cases cited by Plaintiffs, the proposed subject matter of the *ex parte* communication was the medical condition and treatment of the plaintiff. Not

surprisingly, the courts in Plaintiffs' cases pointed to the confidential nature of communications between a patient and her physician, the existence of a physician-patient privilege in many states, and the privacy safeguards contained in HIPAA and ruled that defense attorneys were not permitted to have unfettered access to plaintiffs' treating physicians. *In re Kugal Mesh Hernia Repair Patch Litig.,* MDL No. 07-1842ML, 2008 WL 2420997, *1 (D.R.I. 2008) (protecting physician-patient confidentiality was more important than expediting defendants' discovery); *In re Baycol Products Litig.,* 219 F.R.D. 468, 471 (D.Minn. 2003) (Minnesota law, which prohibited the disclosure of information or opinions acquired by a physician during a treatment relationship with the plaintiff, precluded defendants from *ex parte* communications with physician); *Weaver v. Mann,* 90 F.R.D. 443, 445 (D.N.D. 1981) (federal rules of civil procedure do not contemplate informal conversations with treating physicians). However, unfettered access is not what AMS proposes. AMS does not seek permission to invade the sanctity of the physician-patient relationship between Ms. Money and Dr. Moore. To the contrary, its expressed interest in speaking with Dr. Moore is to discuss his relationship with AMS.

The undersigned reviewed a number of decisions addressing the issue of *ex parte* communications between defense counsel and a plaintiff's treating physician. Many of the cases included thorough and well-reasoned analyses of matters such as the choice of law, *See In re Zimmer Nexgen Knee Implant Products Liability Litig.,* 890 F.Supp.2d 896 (N.D.Ill. 2012), state and federal privilege laws and procedural rules, *See Weiss v. Astella Pharma U.S., Inc.,* Case No. 05-527-JMH, 2007 WL 2137782 (E.D.Ky. July 23, 2007), and HIPAA's privacy provisions, *Law v. Zuckerman,* 307 F.Supp.2d 705 (D.Md. 2004). Nevertheless, none of the decisions was especially decisive of this court's ruling,

because the issue here is simpler and more straight-forward. Dr. Moore has two distinct roles, one as a treating physician and one as a preceptor/consultant for AMS. For the purposes of interviewing and preparing witnesses, these two roles can be clearly demarcated. As long as AMS does not broach the subject of patient care, the interview pertains only to Dr. Moore's role as a preceptor/consultant. None of the cases cited by Plaintiffs, or reviewed by the court for that matter, involves this peculiar circumstance.

Once Dr. Moore's distinct roles are recognized, it becomes clear that Plaintiffs' reliance on HIPAA is likewise misplaced. HIPAA's privacy provisions explicitly govern the use and disclosure of protected health information. Health information is defined in HIPAA as "any information, whether oral or recorded in any form or medium" that

> "[i]s created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse"; and
>
> "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual."

42 U.S.C. §1320d(4). Thus, HIPAA regulates only information pertaining to the health condition or treatment of an individual, or the payment of health care services. Given that AMS seeks only to meet with Dr. Moore regarding his consulting services for AMS, HIPAA is entirely irrelevant.[1]

Although not precisely on point, one case, *In re Zimmer Nexgen Knee Implant Products Liability Litig.,* 890 F.Supp.2d 896 (N.D.Ill. 2012), is useful to resolving the present dispute. In *Zimmer,* the court examined the appropriateness of an order that

---

[1] Even if state privilege law and HIPAA were relevant, neither would preclude AMS's *ex parte* communication with Dr. Moore in its entirety. HIPAA authorizes a physician to disclose protected health information in civil proceedings pursuant to a qualified protective order while Georgia law recognizes a limited waiver of the physician-patient privilege when a plaintiff has placed her medical condition at issue. *Baker v. Wellstar Health System, Inc.,* 288 Ga. 336, 703 S.E.2d 601 (2010).

- 5 -

distinguished between roles held by a treating physician and allowed or precluded *ex parte* interviews depending upon the subject matter of the communication. The court considered whether defense counsel should be prohibited from contacting treating physicians to interview them as potential expert witnesses in an MDL involving knee implant devices. The court first noted that courts in other jurisdictions had approved similar orders after balancing the interests of the parties and concluding that a blanket order preventing *ex parte* contacts between treating physicians and defendants was an inappropriate way to resolve the competing concerns. Because plaintiffs' privacy rights were protected by entering an order that limited the scope of *ex parte* contacts, the courts found no reason for a wholesale approach to the issue.

The *Zimmer* court also considered public policies arguments in favor of prohibiting defendants from contacting plaintiffs' treating physicians. The court rejected the argument that *ex parte* communications might lead to the inadvertent disclosure of plaintiff's intimate information. Noting that this particular concern generally formed the basis for a ban on *ex parte* contacts between defendants and plaintiffs' physicians, the court explained that, in the context of seeking expert consultation, this concern could be alleviated by entering an order that explicitly prohibited discussions regarding the care of any individual patient. That procedure is suggested by AMS and certainly could be followed in this MDL.

In regard to the argument that defense counsel might improperly influence the testimony of the physician, the court observed that "'the fear of improper influence cuts in both directions,'" because "the potential for influencing trial testimony 'is inherent in every contact between a prospective witness and an interlocutor, formal or informal.'" *Id.* at 907 (quoting *Doe v. Eli Lilly & Co.,* 99 F.R.D. 126, 128 (D.D.C. 1983)).

Nonetheless, the court indicated that:

> As a general proposition ... no party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict any opponent's access to a witness, however partial or important to him, by insisting on some notion of allegiance ... Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows ... [W]hile the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak.

*Id.* at 907 (quoting *Doe v. Eli Lilly & Co.,* 99 F.R.D. at 128). Recognizing that *ex parte* interviews are an expected occurrence in litigation, the court concluded that *improper* influence by an adversary can be remedied with the imposition of appropriate sanctions.

Finally, the court rejected plaintiffs' contention that allowing a treating physician to serve as an expert violated the physician's fiduciary duty to the patient. Persuaded by the reasoning in a recent decision in a New Jersey state appellate court, the *Zimmer* court agreed that while "a patient's 'medical interests' may be consistent with the patient's 'litigation interests' ... whether there is a conflict should be determined 'as a matter of professional judgment by the treating physician, not by the patient's lawyers, or by the courts applying wholesale rules of prohibition and disqualification.'" *Id.* at 908-09 (citing *In re Pelvic Mesh/Gynecare Litig.,* 426 N.J. Super. 167, 189, 43 A.3d 1211, 1224 (N.J.Super.Ct. App. Div. 2012)). Like the *Zimmer* court, the undersigned finds that "[c]ourts overstep their legitimate powers if they impose a duty of silence upon physicians to avoid taking substantive positions contrary to any patient's interests in litigations." *Id.* at 908 (citing *In re Pelvic Mesh/Gynecare Litig.,* 426 N.J. Super. at 188, 43 A.3d at 1223). Dr. Moore's relationship with AMS may lead to testimony that is contrary to Ms. Money's litigation interests, yet the connection between AMS and Dr.

Moore existed before Ms. Money presented for treatment, and the court should not manipulate how the evidence unfolds.

Plaintiffs' additional contention that AMS has no legitimate need to meet with Dr. Moore is unpersuasive. Instead, Dr. Moore is not simply a physician on the customer call list of a medical device sales representative. Dr. Moore played an integral role in AMS's operations as they concerned its mesh products; thus, AMS has every right to meet with Dr. Moore and prepare for inquiry on topics related to Dr. Moore's services for AMS.

After taking into consideration the universal reasons for prohibiting *ex parte* meetings between defense counsel and treating physicians and the specific arguments raised by Plaintiffs regarding Dr. Moore, the court finds that no federal rule, physician-patient privilege, privacy regulation, or public policy argument prevents AMS from meeting with Dr. Moore to discuss his contacts with and activities on behalf of AMS. Therefore, AMS's motion for permission to arrange a meeting and to meet *ex parte* with Dr. Moore prior to his deposition is **GRANTED**. AMS is **ORDERED** to limit its *ex parte* communications with Dr. Moore to his relationship with AMS. AMS is further **ORDERED** to provide Dr. Moore with a copy of this order prior to beginning the meeting and to notify him that he is precluded from disclosing any information relating to his care and treatment of any patient, including Ms. Money, with counsel for Defendant unless he is expressly permitted to do so by further order of the court or by written consent of the patient.

The court **DIRECTS** the Clerk to file a copy of this order in 2:12-md-2325 and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action

number 2:13-cv-11980. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at **http://www.wvsd.uscourts.gov**.

        **ENTERED:** May 22, 2013.

_____
Cheryl A. Eifert
United States Magistrate Judge