IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: AMERICAN MEDICAL SYSTEMS, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY | Case No.: 2:12-md-02325<br><br>[MDL No. 2325] |
| DANIEL CHRISTENSEN, MEDSTAR FUNDING, LC | |
| **Subpoenaed Parties.** | |

## AFFIDAVIT OF DANIEL J. CHRISTENSEN

Before me, the undersigned notary, on this day, personally appeared Daniel J. Christensen, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said:

"My name is Daniel J. Christensen. I am over the age of 18 years, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

I am the President and owner of MedStar Funding ("MedStar"). MedStar buys or factors medical receivables from medical providers who are looking to reduce their risk from treating injured patients who have third party claims or lawsuits. Neither I nor MedStar are a party, factual witness or treatment provider in the underlying Mult-district Litigation (MDL) number 2325. MedStar simply provided a service to certain patients' medical providers who were interested in selling their accounts receivable.

Prior to receiving medical care, patients executed Assignments of Interest with their medical providers. Patients assigned to their medical providers an interest in the patients' recovery in the amount of the medical providers' bills. Patients executed this assignment in exchange for the medical providers delivering medical care to the patients.

After providing patients medical care, the medical providers, at their option, sold their accounts receivable to MedStar and assigned all their rights, title and interest in the receivables and Assignments of Interest to MedStar. At that time, MedStar became the owner of the medical providers' bills and Assignments of Interest.


EXHIBIT A

MedStar and I are seeking protection from the subpoenas of defendant American Medical Systems, Inc. because the information and documents Defendant requested include information that is irrelevant, confidential, privileged, proprietary and private. If disclosed, this information would compromise MedStar's business relationships with other persons and entities, infringe upon MedStar's, patients', or other persons or entity's privacy interests, irreparably injure MedStar's competitive position in its market, and expose MedStar to claims for damages or suits for other relief. More importantly, this information is wholly irrelevant to the pending litigation in MDL No. 2325.

Conceptualizing, developing, implementing and documenting the proper purchase of a medical receivable in this circumstance require a substantial commitment of time and personnel, and an enormous financial investment. Any advantage, whether it is a gain in lead time for the introduction of a new service or an understanding of the competition's weakness, thinking, goals, and strategy can lead to significant gains. Medical factoring is an incredibly competitive business. MedStar is faced with competing against large, well-funded factors from all over the world who are constantly striving to acquire new accounts and increase market share. Disclosure of MedStar's purchase agreement and associated documents would give MedStar's competitors the ability to enter this market or strengthen their existing position in the market to MedStar's detriment.

The terms and conditions underlying MedStar's agreement with the medical providers constitute a trade secret and are proprietary and confidential. For these reasons, MedStar has taken great efforts to ensure the terms and conditions of its provider agreements, including pricing data, remain private. The very terms of the agreement between MedStar and the medical providers prevent both MedStar and the medical provider from disclosing the price paid or terms of the agreement. The terms of the agreement and documentation used by MedStar is not known by individuals outside of MedStar, and is not readily available or able to be acquired by others. In fact, most of MedStar's employees do not have access to the pricing data. When MedStar uses independent contractor collectors, the collectors are not given access to that part of the database system that discloses pricing or purchase terms. Additionally, every employee and independent contractor who works for the company is required to sign nondisclosure and confidentiality agreements in order to be employed.

MedStar has spent a considerable amount of time, energy, and money on legal fees in structuring the provider agreement and associated documents, as well as structuring the purchase transaction. If the terms and conditions of the agreement were to be disclosed and got into the public domain, they could lose their trade secret protection and would be available to MedStar's competitors. Disclosure of the proprietary information that Defendants seek would erode, if not eliminate, this competitive advantage.

Complying with the AMS subpoenas would subject MedStar to undue burden. In order for MedStar to comply with the subpoena requesting documents, it would require perusing each one of the thousands of names included in the requests. Moreover, many of the names are not unique, so MedStar will not only have to retrieve the individual file, but then investigate whether the "Ms. Smith" in its system is the same "Ms. Smith" as on Defendant's list. Then, if the name does match, MedStar will have to download each email, note, and document in its case management system, one by one. Typically, there will be at least 30 entries in a file. Other files may have over 100 entries.

At this stage, MedStar has no idea how many files may relate to the incredibly overbroad and burdensome request. This is an extraordinary burden to place on non-parties with no relevant information."

_____
Daniel J. Christensen

SWORN TO and SUBSCRIBED before me by Daniel J. Christensen on 16 day of Sept, 2013.

_____
Notary Public in and for the
State of Texas

MARIA CRISTINA REYES
Notary Public, State of Texas
My Commission Expires
September 08, 2014

My commission expires: 9/8/14