IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: AMERICAN MEDICAL SYSTEMS, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY<br><br>DANIEL CHRISTENSEN, MEDSTAR FUNDING, LC<br><br>Subpoenaed Parties. | Case No.: 2:12-md-02325<br><br>[MDL No. 2325] |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENAS ISSUED TO NONPARTIES AND MOTION FOR PROTECTIVE ORDER

Filing subpoenas seeking thousands of documents within three business days without setting forth a clear basis is an abuse of the Federal Civil Rules of Procedure (F.R.C.P). Defendant's apparent fishing expedition must be stopped. Nonparties Daniel Christensen[1] and MedStar Funding, LC, ("Movants") by counsel Troy N. Giatras, Matthew Stonestreet, and The Giatras Law Firm, PLLC, pursuant to Rules 45 and 26(c) of the Federal Rules of Civil Procedure, move this Court for an order quashing two subpoenas purportedly served upon Movants and further, an Order protecting these nonparties that have no relevance to any issues raised in this action from being harassed and oppressed by Defendant American Medical Systems, Inc. The subpoenas purportedly served on the evening of September 11, 2013 (i) are entirely absent of relevance to the pending proceedings (ii) subject the Movants to undue burden

---

[1] See Affidavit of Daniel Christiansen attached as Exhibit A in support of Motion to Quash Subpoenas Issued to Nonparties and Motion for Protective Order.

1

(iii) require nonparties to produce privileged trade secret and proprietary information, and (iv) fail to allow reasonable time to comply.

## I. STATEMENT OF FACTS

Defendant American Medical Systems, Inc., ("AMS") is involved in litigation alleging that their medical mesh product was poorly designed, poorly tested, and caused significant medical complications and damage to thousands of women. Plaintiffs in the pending lawsuits seek to recover for personal injuries resulting from the alleged negligence of AMS. Now, as part of these lawsuits, AMS seeks discovery from MedStar Funding ("MedStar") and Daniel Christensen, both non-parties located in Travis County, Texas.

MedStar buys or factors medical receivables from medical providers who are looking to increase or regulate their cash flow and reduce their risk from treating injured patients who have third party claims or lawsuits. Daniel Christensen is the founder and owner of MedStar. Neither Daniel Christensen nor MedStar are parties, fact witnesses, or treatment providers in these lawsuits. MedStar simply provided a service to certain patients' medical providers who were interested in selling their accounts receivable. On the evening of September 11, 2013, Defendant AMS attempted to serve Daniel Christensen and MedStar with two subpoenas. *See* "Subpoena to Produce Documents," ECF No. 855 and "Subpoena to Testify at Deposition," ECF No. 857-1.

These subpoenas seek a wide breadth of irrelevant information and offer absolutely no instruction explaining why they were issued. Based on the filings and information sought in the subpoenas, it appears that Defendant AMS has subpoenaed these non-parties not for any authorized discovery purpose, but instead as part of an unrelated and unauthorized campaign to harass or intimidate. Left with no other alternative, Mr. Christensen and MedStar come before

this Court to seek protection from the burdensome, irrelevant, trade-secret seeking, defective subpoenas issued by defendant AMS.

## II.  ARGUMENT

### A. The Subpoenas Issued by AMS are Both Irrelevant and Overly Burdensome

Defendant AMS is inexplicably requesting documents and a deposition from nonparties to this action. None of the information sought has any relevance to the present litigation. Under Federal Rule of Civil Procedure 45(c)(3)(iv), a court shall quash or modify a subpoena if it "subjects a person to undue burden." Issuing a broad subpoena for the production of documents that cannot have any impact on the present proceedings is an abuse of the federal rules.

The present litigation concerns damages to patients injured through faulty mesh implants. This has absolutely nothing to do with MedStar or Daniel Christensen. MedStar, a nonparty to this case, buys or factors receivables from medical providers who are looking to increase or regulate their cash flow and reduce their risk from treating injured patients who have third party claims or lawsuits. While MedStar may have purchased some accounts from some of the individual Plaintiff's medical providers, those potential purchases are in no way relevant to determine accountability of the Defendant, nor any relevant fact contention in this matter.

Despite this fact, Defendant AMS issued two subpoenas seeking information related to each and every plaintiff with cases filed in MDL 2325. This wildly broad request demands information for nearly twenty thousand people. To make matters worse, the subpoena required that all of this information would be assembled and delivered to Philadelphia, Pennsylvania within only two business days of attaining service. The burden is obvious. When factoring in that the subjects are third parties without a shred of relevant information, it is plain how defendant AMS has found itself outside of the bounds of F.R.C.P. 26.

Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. Rule of Evid. Rule 401. The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. Rule of Evid. Rule 403.

Introducing evidence regarding MedStar's payments would confuse the issues and needlessly waste time. The Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding the disclosure or discovery of the material at issue. F.R.C.P. 26(c)(1). Likewise, Rule 45(c)(3) requires the Court to quash a subpoena that "subjects a person to an undue burden." F.R.C.P. 45(c)(3); *see also Singletary v. Sterling Transp. Co., Inc.,* 289 F.R.D. 237 (E.D. Va. 2012). This undue burden category "encompasses situations where the subpoena seeks information irrelevant to the case." *Cook v. Howard,* 484 F. App'x 805, 812 (4th Cir. 2012) *cert. denied,* 133 S. Ct. 1600, 185 L. Ed. 2d 580 (U.S. 2013).

Complying with the MedStar subpoena would subject these non-parties to undue burden. In order for MedStar to comply with the subpoena requesting documents, it would require perusing each one of the nearly twenty thousand names included in the requests. Moreover, many of the names are not unique, so MedStar will not only have to retrieve the individual file, but then investigate whether the "Ms. Smith" in its system is the same "Ms. Smith" as on Defendant's list. Then, if the name does appear, MedStar will have to download each email, note, and document in its case management system, one by one. Typically, there will be at least 30 entries in a file. Other files have over 100 entries. At this stage, MedStar has no idea how

many files may relate to the incredibly overbroad and burdensome request. This is an extraordinary burden to place on non-parties *with no relevant information*. The AMS subpoenas must be quashed.

**B. The Subpoenas Issued by AMS Seek to Extract Protected Trade Secret Information**

To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires, "disclosing a trade secret or other confidential research, development, or commercial information." F.R.C.P. 45(c)(3)(b)(i). "Trade secret" means information, including, but not limited to, a formula, pattern, compilation, program, device, method, technique or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. W. Va. Code § 47-22-1(d).

MedStar has invested a considerable amount of time and resources in drafting and revising the documents used in the purchase of medical receivables. The language in the documents, as well as the structure of the transaction, are proprietary and constitute trade secret under. W. Va. Code § 47-22-1(d). The information Defendant AMS seeks is confidential, privileged, proprietary and private. If disclosed, this information would compromise MedStar's business relationships with other persons and entities, infringe upon MedStar's, Plaintiff's, or other persons or entity's privacy interests, irreparably injure MedStar's competitive position in its market, and expose MedStar to claims for damages or suits for other relief.

Conceptualizing, developing, implementing and documenting the proper purchase of a medical receivable in this circumstance requires a substantial commitment of time and personnel,

and an enormous financial investment. Any advantage, whether it is a gain in lead time for the introduction of a new service or an understanding of the competition's weakness, thinking, goals, and strategy can lead to significant gains. Medical factoring is an incredibly competitive business. MedStar is faced with competing against large, well-funded factors from all over the world who are constantly striving to acquire new accounts and increase market share. Disclosure of MedStar's proprietary documents, including pricing, would give MedStar's competitors the ability to enter this market or strengthen their existing position in the market to MedStar's detriment.

The price MedStar pays medical providers for their accounts receivable is proprietary and, if disclosed, would allow MedStar's competitors to slightly outbid MedStar and potentially steal MedStar's medical provider accounts. Additionally, disclosure of this information could harm the medical providers' efforts to obtain much higher reimbursement rates from other finance companies. Lastly, this sensitive price data could be used by the parties to this lawsuit in an effort to attempt to negotiate a purchase of MedStar's interest.

MedStar has taken great efforts to ensure the terms and conditions of its provider agreements, including pricing data, remain private. The very terms of the agreement between MedStar and the medical providers prevent both MedStar and the medical provider from disclosing the price paid or terms of the agreement. The terms of the agreement and documentation used by MedStar is not known by individuals outside of MedStar, and is not readily available or able to be acquired by others. In fact, most of MedStar's employees do not have access to the pricing data. When MedStar uses independent contractor collectors, the collectors are not given access to that part of the database system that discloses pricing or purchase terms. Additionally, every employee and independent contractor who works for the

company is required to sign nondisclosure and confidentiality agreements in order to be employed.

Thus, MedStar has spent a considerable amount of time, energy, and money on legal fees in structuring the provider agreement and associated documents, as well as structuring the purchase transaction. If the terms and conditions of the agreement were to be disclosed and got into the public domain, they could lose their trade secret protection and would be available to MedStar's competitors. Disclosure of the proprietary information that Defendant seeks would erode, if not eliminate, this competitive advantage. Therefore, in accord with F.R.C.P. 45(c)(3)(b)(i), this Court must quash the subpoenas of Defendant AMS in order to prevent the disclosure of sensitive trade secret information.

### C. The Subpoenas do Not Allow a Reasonable Amount of Time to Comply

The subpoena requesting an extensive amount of documents was served only two (2) business days before the date of the production of documents and four (4) business days prior to the deposition date. This is clearly an insufficient amount of time for Plaintiffs to comply with Defendant's wildly overbroad requests. Rule 45(c)(3)(i) provides that the Court "must quash or modify a subpoena that *fails to allow a reasonable time to comply*." (emphasis added). The subpoena requesting the production of documents does not allow anywhere near enough time to collect, review, and produce the irrelevant documents in the oppressive time frame established by Defendant AMS. These non-parties cannot reasonably comply with the subpoena for documents within this time frame, and ask this Court to quash the subpoena for documents upon these grounds alone.

## III. CONCLUSION

For all of the forgoing reasons, nonparties MedStar and Daniel Christensen request that this Court enter an Order granting their Motion to Quash subpoenas issued by Defendant AMS, protect Movants from Defendant's overbroad and harassing discovery, and for any other relief to which Movants are justly entitled, at law or in equity.

Dated: September 16, 2013

Respectfully Submitted,

Troy N. Giatras, Esquire
THE GIATRAS LAW FIRM, PLLC
118 Capitol Street, Suite 400
Charleston, WV 25301
Phone: (304) 343-2900
Fax: (304) 343-2942
WV State Bar ID #5602

Matthew Stonestreet, Esquire
THE GIATRAS LAW FIRM, PLLC
118 Capitol Street, Suite 400
Charleston, WV 25301
Phone: (304) 343-2900
Fax: (304) 343-2942
WV State Bar ID #11398

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: AMERICAN MEDICAL SYSTEMS, INC. PELVIC REPAIR SYSTEMS PRODUCTS LIABILITY<br><br>DANIEL CHRISTENSEN, MEDSTAR FUNDING, LC<br><br>**Subpoenaed Parties.** | Case No.: 2:12-md-02325<br><br>[MDL No. 2325] |

## CERTIFICATE OF SERVICE

I, Troy N. Giatras, Esquire, do hereby certify that on September 16, 2013, I electronically filed the foregoing "*Memorandum of Law in Support of Motion to Quash Subpoenas Issued to Non Parties and Motion for Protective Order*" with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Troy N. Giatras
Troy N. Giatras, Esquire
THE GIATRAS LAW FIRM, PLLC
118 Capitol Street, Suite 400
Charleston, WV 25301
304-343-2900 (phone)
304-343-2942 (fax)
WV State Bar ID # 5602