## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE:  AMERICAN MEDICAL SYSTEMS, INC.
       PELVIC REPAIR SYSTEMS
       PRODUCT LIABILITY LITIGATION        MDL No. 2325

----------------------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

### PRETRIAL ORDER # 88
(Motion to Quash and Motion for Protective Order)

Pending before the court are Plaintiffs' Motions to Quash Third-Party Subpoenas to MedStar Funding, One Point Orthopedic and Neurosurgical Group and Otto Fisher, (ECF Nos. 870, 872), and Motion to Quash Subpoenas Issued to Nonparties and Motion for Protective Order, (ECF No. 879). Defendant, American Medical Systems, Inc. ("AMS") filed an omnibus response, (ECF No. 892), which was adopted by Ethicon, Inc. (ECF No. 893). Subsequently, Plaintiffs withdrew their motions, leaving before the court only the motions of nonparties, MedStar Funding ("MedStar") and Daniel Christensen ("Christensen"), to quash and for a protective order. MedStar and Christensen filed a reply memorandum in support of their motions. (ECF No. 908). Therefore, the issues have been fully briefed.

On October 10, 2013, the undersigned conducted a hearing on the motions to quash and for a protective order. The parties were represented by counsel, as were

MedStar and Christensen. After considering the arguments of counsel, the court **DENIES** Plaintiffs' Motions to Quash Third-Party Subpoenas to MedStar Funding, One Point Orthopedic and Neurosurgical Group and Otto Fisher, as they have been withdrawn, (ECF Nos. 870, 872); **DENIES** the Motion to Quash of MedStar and Christensen, but **GRANTS** their Motion for Protective Order as outlined below. (ECF No. 879).

## I.   <u>Relevant History</u>

This multidistrict litigation involves surgical mesh products designed, manufactured, marketed, and sold by AMS to treat pelvic organ prolapse and stress urinary incontinence. AMS recently learned from a surgical consultant that an entrepreneur by the name of Otto Fisher ("Fisher") is soliciting surgeons to perform mesh revision and removal surgeries on Plaintiffs in this and other pelvic mesh litigation. According to the information received by AMS, Fisher is associated in this endeavor with MedStar, a medical receivables factoring company operated by Christensen that specializes in the purchase and collection of personal injury and workers compensation accounts receivable. After hearing statements allegedly made by Fisher to the surgical consultant, AMS grew concerned that Fisher and his business entity, One Point Orthopedic and Neurosurgical Group,[1] and Christensen, through MedStar, were part of a "scheme" to arrange unnecessary surgeries and create fraudulent medical records designed to increase the value of the pelvic mesh cases before this court. Consequently, AMS served subpoenas for the production of documents on the two business entities and additional subpoenas commanding the

---

[1] According to Christensen, he knows Fisher to be a representative of an entity called Physicians Surgical Group ("PSG").

presence of Fisher and Christensen at depositions. Fisher and his business entity reportedly have not opposed the subpoenas and are in the process of complying with them. Christensen and MedStar, on the other hand, object to the subpoenas on the basis that they are overly broad and burdensome and seek confidential and proprietary information.

## II.    Jurisdiction of the Court

Although none of the interested parties has asserted that this court lacks authority to quash or modify the subpoenas, the matter of jurisdiction should be addressed at the outset. Fed.R.Civ.P. 45(c)(3)(A) allows, and in certain circumstances requires, "the issuing court" to quash or modify a subpoena. The text of the rule is clear "that a motion to quash or modify a subpoena must be brought in the court from which the subpoena was issued, rather than the court where the underlying action is pending." *First Time Videos LLC v. John Doe*, Case No. 2:11-cv-690, 2012 WL 1134736, at*1 (E.D.Va., Apr. 4, 2012); *See also In Re Subpoena of American Nurses Association,* 788 F.Supp.2d 444, 445 (D.Md. 2011) (*citing United States v. Star Scientific, Inc.,* 205 F.Supp.2d 482, 485 (D.Md.2002)). In this case, the subpoenas in dispute were issued by the United States District Court for the Western District of Texas. Consequently, a motion to quash the subpoenas would normally be filed in that court.

However, under 28 U.S.C. § 1407, a court presiding over multidistrict litigation may "exercise the powers of a district judge *in any district* for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings" (emphasis added). Courts have specifically held that the authority granted to a presiding court under § 1407 extends to other pretrial matters, such as the production of documents, "even when the subpoena is not issued in conjunction with a deposition." *In re*

*Genetically Modified Rice Litigation,* Case 4:06-MD-1811 CDP, 2009 WL 3164425, *1 (E.D.Mo. Sept. 28, 2009)(collecting cases). Indeed, "the rationale underlying the MDL statute of 'just and efficient' resolution of pretrial proceedings requires the conclusion that <u>Section 1407(b)</u>'s grant of authority applies to both deposition subpoenas and documents-only subpoenas." *In re Neurontin Marketing, Sales Practices, and Product Liability Litigation,* 245 F.R.D. 55, 58 (D.Mass. 2007) (quoting *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America,* 444 F.3d 462, 469 n.4 (6th Cir. 2006)). Thus, a presiding court "may compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted." *Id.* (quoting *U.S. ex rel. Pogue,* 444 F.3d at 468-69 (6th Cir. 2006)). Consequently, this court has jurisdiction to quash or modify the subpoenas served on Christensen and MedStar.

Furthermore, motions for protective order should be brought "in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." Fed.R.Civ.P. 26(c). Here, Christensen and MedStar have moved for a protective order in the district where the litigation is pending. Accordingly, this court likewise has jurisdiction over the motion for protective order.

III.    <u>Discussion</u>

In regard to the motion to quash the subpoena commanding Christensen to appear for deposition, the parties agreed at the hearing that Christensen would make himself available for testimony. Therefore, the motion to quash the subpoena is **DENIED**. Christensen complains, however, that AMS did not provide him with

4

sufficient notice to comply with the subpoena and seeks a protective order specifying the terms of his deposition. The undersigned **GRANTS** Christensen's motion and **ORDERS** the parties to meet and confer with Christensen and agree upon a mutually convenient date, time, and location for his deposition.

Turning next to the subpoena for the production of documents, MedStar reports that it is willing to produce a portion of the documents requested in the subpoena, but seeks limitations on the scope and extent of the production. In view of MedStar's agreement to comply, at least in part, with the subpoena, the court **DENIES** its motion to quash. Nonetheless, the undersigned agrees with MedStar that the subpoena is overly broad and burdensome and threfore **GRANTS** its motion for a protective order. AMS has a legitimate basis upon which to explore the allegations of the surgical consultant. At the same time, MedStar has the right to be protected from discovery that is oppressive and burdensome. Until some discovery is conducted into the alleged scheme between Fisher and Christensen (and/or PSG and MedStar), wholesale discovery of MedStar's files is not merited.

AMS supplied MedStar with approximately 20,000 names of Plaintiffs in this litigation and demanded that MedStar search its accounts looking for documents related to pelvic mesh and the named Plaintiffs. MedStar claims that conducting this search will require manual review of a large portion of its accounts, which number in the thousands. MedStar further argues that it is a small company with only five employees; therefore, completing this task will result in significant interruption of its business operations. MedStar contends that only a small percentage of its business involves treatment related to pelvic mesh, and receivables purchased from physicians under contract with Fisher constitute an even smaller percentage. MedStar emphasizes that

the allegations of fraud made by AMS specifically involve Fisher and his company. Consequently, AMS fails to state a valid basis for demanding records from accounts that have no connection to Fisher.

In response, AMS argues that Otto Fisher may be one of many entrepreneurs contracting with surgeons to perform mesh revision and removal surgeries for litigation purposes. Accordingly, MedStar is potentially involved in multiple schemes. In AMS's view, the only way to determine which Plaintiffs, if any, were scheduled for revision/removal surgeries for the purpose of increasing the value of their claims is to seek discovery relevant to each individual Plaintiff. Accordingly, if discovery is limited to those Plaintiffs involved with Fisher, AMS is denied the opportunity to fully expose fraudulent records and unnecessary surgeries financed by MedStar.

Balancing the legitimate needs of the parties and nonparties, the court concludes that, at this time, AMS is entitled to receive the documents in MedStar's possession related to Fisher, PSG, and any other entity operated by Fisher, to the extent that the documents involve, arise from, or are pertinent to treatment rendered to or arranged for Plaintiffs in this litigation. The court therefore **ORDERS** MedStar to produce all such documents within **ten (10) days** of the date of this Order. If the documents and deposition of Christensen demonstrate grounds for AMS to obtain additional records from MedStar, AMS shall meet and confer with MedStar in an effort to agree on the scope and extent of the additional discovery.

MedStar's final concern involves the production of proprietary and confidential materials. MedStar argues that medical receivables factoring is a highly competitive business. As such, MedStar has devoted considerable time and resources developing its business model and drafting the documents it uses to purchase the accounts receivable.

6

According to MedStar, if its work product is disclosed, MedStar's competitors can use the information to enter the market or strengthen their existing market position. In addition, Medstar claims that disclosure of its pricing structure would allow MedStar's competitors to outbid MedStar or steal away its provider accounts.

Fed.R.Civ.P. 26(c)(1)(G) allows the court to order that trade secrets or other confidential research, development, or commercial information "not be revealed or be revealed only in a specified way." To merit protection under Rule 26(c)(1)(G), commercial information must be more than just routine business data; instead, it must be important proprietary information that provides the business entity with a financial or competitive advantage when it is kept secret and results in financial or competitive harm when it is released to the public. *Gonzales v. Google, Inc.,* 234 F.R.D. 674, 684 (N.D.Cal. 2006); *see also Diamond State Ins. Co. v. Rebel Oil Co., Inc.,* 157 F.R.D. 691, 697 (D.Nev. 1994) ("Confidential commercial information" is "information, which disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."). Examples of confidential commercial information entitled to protection under Rule 26(c) include customer lists and revenue information, *Nutratech, Inc., v. Syntech Intern, Inc.,* 242 F.R.D. 552, 555 (N.D.Cal. 2007); product design and development and marketing strategy, *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 305 (D.Ill. 1994); labor costs, *Miles v. Boeing,* 154 F.R.D. 112, 114 (E.D.Pa. 1994); and commercial financial information, *Vollert v. Summa Corp.,* 389 F.Supp 1348, 1352 (D.Hawaii 1975). Moreover, "[p]ricing and marketing information are widely held to be confidential business information that may be subject to a protective order." *Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.,* 224 F.R.D. 53, 57 (D.Conn. 2004) (citing *Vesta Corset Co. v. Carmen Foundations, Inc.,*

1999 WL 13257, at *2 (S.D.N.Y. 1999)).

The undersigned suspects that some of the material requested by AMS is proprietary commercial information subject to protection. However, without seeing the materials, the undersigned is unable to assess the level of protection that is appropriate. Therefore, AMS, Plaintiffs, and MedStar are **ORDERED** to meet and confer on the terms and conditions of a protective order that will govern the use and disclosure of MedStar's documents. To the extent they are applicable, the terms and conditions of prior protective orders entered in this litigation shall be adopted and incorporated in any new protective order tendered to the court.

The court **DIRECTS** the Clerk to file a copy of this order in 2:12-md-2325 and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:13-cv-25158. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at http://www.wvsd.uscourts.gov.

**ENTERED:** October 11, 2013.

Cheryl A. Eifert
United States Magistrate Judge

8