### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE: AMERICAN MEDICAL SYSTEMS, INC.
      PELVIC REPAIR SYSTEMS
      PRODUCT LIABILITY LITIGATION      MDL No. 2325

---------------------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

### PRETRIAL ORDER # 164
(Motion to Quash or Modify Subpoenas)

Pending before the court is the motion of nonparties, Daniel J. Christensen and MedStar Funding, LC (collectively "MedStar"), to modify or quash subpoenas served by American Medical Systems, Inc. ("AMS") on various third parties, which seek, in relevant part, information regarding amounts paid by MedStar for certain medical receivables, and amounts collected by MedStar when those medical receivables are paid or sold. (ECF No. 1137). AMS has filed a response in opposition to the motion, (ECF No. 1177), and MedStar has filed a reply memorandum. (ECF No. 1197). The issues are fully briefed and are clear; therefore, oral argument is unnecessary. For the reasons that follow, the court **DENIES, in part,** and **GRANTS, in part,** the motion.

### I.    Relevant Background

This multidistrict litigation involves surgical mesh products designed, manufactured, marketed, and sold by AMS to treat pelvic organ prolapse and stress urinary incontinence. Over the past six months, AMS has engaged in discovery with MedStar, a factoring entity that specializes in the purchase and collection of personal

1

injury and workers compensation accounts receivable, for the purpose of determining its role in mesh revision and removal surgeries involving Plaintiffs in this MDL. Recently, AMS served subpoenas *duces tecum* on a number of medical providers and other entities requesting the production of all "documents, including agreements, contracts, and/or communications, relating to Medstar Funding and any of its subsidiaries, principals, employees, representatives, or agents, including but not limited to, Dan Christensen, Lisa Christensen, Denise Roman, or Maria Reyes," or otherwise requesting materials relating to MedStar. MedStar objects to these subpoenas on the basis that they require the production of documents that would reveal MedStar's confidential pricing structure and profit margin. Accordingly, MedStar asks the court to quash the subpoenas, or to modify them and order the third-party recipients to redact from any documents produced information reflecting (1) any amount MedStar paid for an account receivable, and (2) any amount MedStar received when it sold or collected the account receivable. AMS argues in response that it is entitled to know the actual amounts paid to any medical provider or facility rendering services to an MDL Plaintiff; that this information is relevant in determining whether the amount billed by the provider or facility was artificially inflated to support the factoring arrangement; and that MedStar has waived its right to confidentiality by providing the information to the third-parties that have been subpoenaed.[1]

---

[1] AMS does not argue that MedStar lacks standing to seek an order quashing or modifying the subpoenas; nonetheless, the undersigned makes an initial finding that MedStar does have the requisite standing. "Generally, only the party or person to whom the subpoena is directed has standing to move to quash or otherwise object to a subpoena." *Transcor, Inc. v. Furney Charters, Inc.,* 212 F.R.D. 588, 590 (D.Kan. 2003) (citation omitted). An exception is when the person objecting to the subpoena has a personal right or privilege in the information sought by the requester. *Singletary v. Sterling Transport Company, Inc.,* 289 F.R.D. 237, 239 (E.D.Va. 2012). MedStar plainly has a personal right or privilege in its confidential business information.

## II. Discussion

On motion, and to protect a person subject to or affected by a subpoena, Federal Rule of Civil Procedure 45(d)(3)(B)(i) authorizes the court for the district where compliance is required to quash or modify a subpoena that necessitates disclosure of a trade secret or other confidential research, development, or commercial information."[2] As an alternative, instead of quashing or modifying the subpoena, the court may order production of the information under specified conditions if the serving party shows "a substantial need" for the information "that cannot be otherwise met without undue hardship" and "ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(3)(C). The subpoenaed party has the initial burden of demonstrating the confidential and proprietary nature of the information, and the party's historical efforts to protect it from disclosure. *Gonzales v. Google, Inc.,* 234 F.R.D. 674, 684 (N.D.Cal. 2006); *Compaq Computer Corp. v. Packard Bell Elec., Inc.,* 163 F.R.D. 329, 338 (N.D.Cal. 1995). However, once that showing is made, the burden shifts to the requesting party to establish a substantial need for the information that cannot be met without undue hardship. *Id.*

Confidential commercial information, within the meaning of Fed. R. Civ. P. 45(d)(3)(B)(i) and its counterpart Fed.R.Civ.P. 26(c)(1)(G), is more than just routine business data; instead, it is important proprietary information that provides the business entity with a financial or competitive advantage when it is kept secret, and results in financial or competitive harm when it is released to the public. *Gonzales,* 234 F.R.D. at 684; *see also Diamond State Ins. Co. v. Rebel Oil Co., Inc.,* 157 F.R.D. 691, 697

---

[2] Although this court is not located in the district where compliance of the subpoenas is required, jurisdiction to resolve the motion to quash or modify exists under 28 U.S.C. § 1407. *See In re Neurontin Marketing, Sales Practices, and Product Liability Litigation,* 245 F.R.D. 55, 58 (D.Mass. 2007) (quoting *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America,* 444 F.3d 462, 468-69 (6th Cir. 2006)).

(D.Nev. 1994) ("Confidential commercial information" is "information, which disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."). Examples of confidential commercial information entitled to protection under Rules 26(c)(1)(G) and 45(d)(3)(B)(i) include customer lists and revenue information, *Nutratech, Inc., v. Syntech Intern, Inc.,* 242 F.R.D. 552, 555 (N.D.Cal. 2007); product design and development and marketing strategy, *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 305 (D.Ill. 1994); labor costs, *Miles v. Boeing,* 154 F.R.D. 112, 114 (E.D.Pa. 1994); and commercial financial information, *Vollert v. Summa Corp.,* 389 F.Supp 1348, 1352 (D.Hawaii 1975). Moreover, "[p]ricing and marketing information are widely held to be confidential business information that may be subject to a protective order." *Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.,* 224 F.R.D. 53, 57 (D.Conn. 2004) (citing *Vesta Corset Co. v. Carmen Foundations, Inc.,* 1999 WL 13257, at *2 (S.D.N.Y. 1999)).

    MedStar argues that it "is in the business of purchasing accounts receivable at a reduced rate, with the intent of being paid a larger amount at a later date. This difference is the profit margin for MedStar as a business, and is the very core of its sustainability." (ECF No. 1137 at 5). According to MedStar, the business of "factoring" is highly competitive; therefore, disclosure of its buy and sell/collect ratios would place MedStar at a distinct competitive disadvantage in the market, causing it substantial economic harm. Once other factoring entities learned MedStar's numbers, they could simply undercut MedStar's business by paying more for the receivables and/or selling them for less. Similarly, medical providers selling their receivables could demand higher prices, while purchasers or reimbursement organizations could bargain to pay MedStar less. Notably, AMS does not disagree that this ***type*** of data constitutes confidential

4

commercial information. Rather, AMS argues that MedStar waived any confidentiality associated with its data by disclosing it to third parties.

Having considered the arguments, the undersigned finds MedStar's position to be persuasive. The business of factoring is nothing more than buying an account receivable for less than the amount that is owed on the account and then trying to collect from the debtor as much of the outstanding debt as possible. Clearly, the amount paid for the account and the amount ultimately collected on the account are figures that must be closely guarded if the factoring entity plans to make the best possible return on its investment. Moreover, these amounts not only must be kept confidential from competitors that could attempt to steal business by offering the account owner and the account debtor better deals, but also from the owner and the debtor, who may not be inclined to take as little or pay as much if they know the profit margin. Therefore, the undersigned finds that MedStar has carried its burden to demonstrate the proprietary nature of this information. As to AMS's argument that MedStar waived confidentiality by sharing the information with third parties, there is no evidence of such widespread sharing before the court. Some amount of sharing may have occurred with "subcontractors" such as PSG, but the materials before the court suggest that any sharing has been accompanied by written confidentiality agreements. In addition, MedStar has consistently asserted its right to keep this particular data confidential throughout the pendency of the discovery in this MDL. Accordingly, the undersigned does not find in this instance that MedStar waived confidentiality in its pricing data.

The burden then shifts to AMS to establish that it has a substantial need for the information MedStar seeks to conceal "that cannot be otherwise met without undue hardship." To carry this burden, AMS argues that this data is directly relevant to the

Plaintiffs' damages claims. AMS asserts that Plaintiffs will likely present the medical bills for their mesh revision and removal surgeries as an element of damages. AMS points to several specific instances in which the invoices tendered for the surgeries were significantly greater than the amounts the providers and facilities were actually paid by the factoring entities that purchased the corresponding accounts receivable. As a result, AMS argues that unless it can discover the amounts the physicians and facilities were paid for the mesh procedures, it will be prevented from rebutting the reasonableness of the claimed medical expenses when offered at trial. Moreover, AMS suggests that the factoring entities, middlemen, physicians and facilities are working together to artificially inflate the accounts receivable; consequently ensuring enough "fat" to pay the player at every layer of the arrangement.

Clearly, AMS is entitled to know the full amount billed by the physicians and facilities that provide medical services to Plaintiffs related to their damage claims in this MDL. AMS is also entitled to know the total amount of payment the physicians and facilities receive for those services, and from whom the physicians and facilities are paid. However, the undersigned agrees with MedStar that to the extent intermediaries pay the physicians and facilities, the amount paid by MedStar to purchase the receivables and the amount MedStar ultimately receives when it sells or collects the accounts are irrelevant to the issues in this case. Moreover, AMS fails to demonstrate that it will experience undue hardship obtaining the information it needs if it is prevented from invading MedStar's pricing data. AMS can certainly request proof of the amounts invoiced and amounts paid from the treating physicians and from Plaintiffs. AMS can also attack the reasonableness of the invoices issued by the physicians and facilities by using industry comparables, insurance reimbursement schedules, publicly available

hospital and government data; all without having the specific factoring figures or formula used by MedStar. In fact, it is not entirely clear how access to MedStar's pricing data would truly assist in establishing that the original invoices are unreasonable and outside industry standards. Accordingly, the undersigned finds that AMS did not carry its burden under Rule 45(d)(3)(C)(i).

Therefore, the court **DENIES** the motion to quash the subpoenas, but **GRANTS** the motion to modify the subpoenas as follows. Information regarding the amounts billed by the treating physicians and facilities and amounts paid to the treating physicians and facilities shall be produced and shall not be redacted. Information regarding the amount paid by MedStar for any account receivable, to the extent that it is not paid directly to a physician or facility, shall be entitled to confidentiality and may be redacted. In addition, the amounts received by MedStar for the subsequent sale or collection of any account receivable shall be entitled to confidentiality and shall be redacted. Finally, any formula used by MedStar for the purchase of an account receivable or for the sale/collection of an account receivable is entitled to confidentiality and shall be redacted. All other information requested by the subpoenas shall be produced as required by the Rules of Civil Procedure.

The court **DIRECTS** the Clerk to file a copy of this order in 2:12-md-2325 and it shall apply to each member related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:14-cv-13443. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the

Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at **http://www.wvsd.uscourts.gov**.

                                        **ENTERED:** March 31, 2014

                                        Cheryl A. Eifert
                                        United States Magistrate Judge