IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE: AMERICAN MEDICAL SYSTEMS, INC.
       PELVIC REPAIR SYSTEMS          MDL No. 2325
       PRODUCTS LIABILITY LITIGATION    Honorable Joseph R. Goodwin

---------------------------------------------------------------
**THIS DOCUMENT RELATES TO:**
*All Cases In Wave 3*

**DEFENDANT AMERICAN MEDICAL SYSTEMS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR THE ENTRY OF MONETARY SANCTIONS IN THE AMOUNT OF $100,000 AND TO STRIKE AMS' GENERAL EXPERTS FOR AMS' FAILURE TO COMPLY WITH PTO #255**

From the beginning of Wave 3, AMS reached out to Plaintiffs' co-lead counsel, Amy Eskin and Fidelma Fitzpatrick, (collectively the "PCLC"), in an effort to manage the expert schedule in a sensible fashion. The PCLC reacted first with inattention and then with intransigence. As a result, the Wave 3 Plaintiffs found themselves faced with a difficult expert deposition and *Daubert* briefing schedule. It could have been avoided. Now the PCLC endeavors to escape the consequences of their own inattention and intransigence by cobbling together a spurious sanctions motion based on a failure of service that was (a) not required by PTO #255 or PTO #4, and (b) that was, in any event, remedied over seventy days ago.

On August 13, 2018, AMS served expert reports and disclosures on the Plaintiffs' counsel specifically handling cases. AMS did not at that time also serve the PCLC. Such service was not required by PTO #255, PTO #4, or any other PTO cited by the PCLC. As soon as the PCLC asked for the expert materials, AMS emailed them to the PCLC on August 31, 2018. Plaintiffs suffered no prejudice whatsoever. Neither the PCLC nor the case-specific Plaintiffs mentioned any adverse consequence from the eighteen-day delay. In any event, if the

PCLC exercised actual leadership, there would not have been any actual delay. Apparently the PCLC's communications with their fellow Plaintiff lawyers are as ineffectual and unproductive as their communications with AMS.

The PCLC's sanctions motion filed on November 9, 2018 is too late and too transparently meritless. The Local Rules of this district require that motions regarding discovery responses and disclosures must be filed within thirty days, which would have been on September 30, 2018. The PCLC filed no timely motion. That non-filing is not surprising, because there was no prejudice. Only now, seventy days after the PCLC received the expert reports, do they file a sanctions motion as a means of doing what they could not legitimately do through the discovery process – eliminating AMS's experts. Strictly and solely as a matter of sheer and stupendous tardiness, the sanctions motion fails.

The sanctions motion also fails on substantive grounds. Under Federal Rule of Civil Procedure 37 and Fourth Circuit case law, there are two independent reasons why the PCLC's sanctions motion must be denied: (1) AMS violated no court order cited by the PCLC and followed past practice by serving expert reports on the Plaintiff-specific counsel; and (2) neither the PCLC nor case-specific Plaintiff counsel suffered an ounce of prejudice. There was no surprise. There was no disruption of the expert discovery process. The expert reports were virtually identical to those served in earlier waves. Any delays in the Wave 3 expert discovery and motions process were prompted by the PCLC's refusals to communicate or their own scheduling decisions. Moreover, the practice of serving expert reports on case-specific Plaintiffs but not the PCLC had also occurred in earlier discovery waves. Curiously, there was no objection in those earlier waves.

AMS certainly wishes, just as a matter of courtesy, that it had served every expert report and disclosure on the PCLC when it served plaintiff-specific counsel. It intends to copy the PCLC on everything going forward. Wave discovery is a complicated process. AMS intends to follow this Court's Orders to the letter, and did so with PTO #255. But the PCLC's sanctions motion is not based on any violation of a court order. Rather, the sanctions motion is a post hoc exercise in cynicism. Parties should play by the rules. Parties should not benefit by distorting the rules and rewriting history, as the PCLC is so obviously doing. Finally, the absurd relief sought -- the monetary sanctions untethered to any actual harm and the wholesale striking of experts – highlights the motion's lack of seriousness.

## I. FACTS

**A.     The Wave 3 Order Imposed Compressed Timeframes.**

PTO #255, entered on June 13, 2018, set short timeframes for discovery deadlines on both Plaintiffs and AMS. Shortly after the entering of PTO #255, AMS attempted to work out a protocol for expert discovery in Wave 3. *See, e.g.*, Ex. A. The PCLC was unresponsive to these *repeated* overtures, ultimately suggesting that AMS should just negotiate directly with case-specific Plaintiff counsel, but stating emphatically that they would not agree to the amendment of any deadlines. *See* Ex. B. Right from the beginning, the PCLC exhibited a pattern of both abdication and obstruction. After a nearly six week delay, and an increasingly predictable lack of responsiveness by the PCLC, AMS was forced to meet the expert disclosure deadlines set forth in PTO #255, and did so. AMS's general experts were necessarily deposed after Plaintiffs' experts, though AMS offered dates before the reply deadline so that Plaintiffs could file supplemental briefing, as AMS did. *See* Ex. C.

#### a. PTO #255 Sets Forth Scheduling Deadlines, but is Silent as to Service.

PTO #255 calendars various Wave 3 deadlines, including those for expert disclosures. AMS met those deadlines by serving case-specific counsel on August 13. PTO #255 discusses "[c]ases ready for transfer, remand or trial," *Daubert* motion practice, and various discovery request limitations. PTO #255, simply, *does not* state that AMS is obligated to serve the PCLC with expert materials.

#### b. PTO #4 Does Not Require AMS to Serve the PCLC.

Despite the PCLC's oblique and singular reference to PTO #4 as "naming Plaintiffs' Leadership Structure," *see* Mem. at 1, n.1, they fail to explain what about PTO #4 actually requires AMS to serve the PCLC, in addition to case-specific Plaintiff counsel, with expert materials. Like PTO #255, which is cited by the PCLC, there is no language in PTO #4 imposing such an obligation upon AMS. While the PCLC is correct that PTO #4 outlines the rather complicated leadership structure of the Plaintiffs, to read PTO #4 as imposing any additional service requirements upon AMS is an extreme and purposeful misreading of the PTO by the PCLC.

**B.     AMS Adhered to Prior Practice by Serving Expert Reports on Plaintiff-Specific Counsel.**

As part of meeting the deadlines set forth in PTO #255, AMS timely served case-specific counsel with expert reports and disclosures on August 13, 2018, including the reports of AMS's general experts, Drs. Badylak, Becker, and Joslin.[1] Despite the PCLC's nebulous contentions to

---

[1] To be clear, the reports of these three general experts offering opinions as to all wave 3 Plaintiffs were timely served on case-specific counsel on August 13, 2018. *See* service emails attached collectively at Ex. D. However, through a clerical error, AMS's service emails to case-specific counsel did not include the "general" sections of the reports of four case-specific experts, Drs. Fagan, Noblett, Rovner, and Sand, though the case-specific portions of these experts' reports including their specific causation opinions were timely served. The "general" sections of those reports, some of which were identical to those served in prior waves and all of which were specifically referenced in their case-specific reports, were subsequently

- 4 -

the contrary, AMS is under no "obligation" or "requirement" to serve the PCLC with those reports or disclosures. The PCLC cite to PTO #255 on numerous occasions as their support for this claim. *See, e.g.*, Plaintiffs' Memorandum of Law in Support of Their Motion ("Mem.") at pgs. 1, 2, 4. Interestingly, though the PCLC cite to the court's direct language from *other*, unrelated PTOs, *see* Mem. at 3, they are resoundingly and revealingly silent when it comes to the language that imposed these supposed service requirements under PTO #255. Their silence in this regard is necessitated by the simple fact that the service language does not exist, and neither does the requirement the PCLC seek to foist upon AMS.

In fact, in prior waves, AMS did not serve the PCLC with expert reports or disclosures as part of standard service. As one example, *see* Ex. E, which indicates clearly that AMS did not provide the PCLC with expert reports filed and served on case-specific counsel on June 21, 2017, until they were requested days later, on June 26, 2017. The PCLC rather notably voiced no objections at that time.

However inconvenient for the PCLC's story, serving expert reports and disclosures on case-specific counsel, and not the PCLC was, in fact, the established pattern of accepted practice. To contend otherwise is to rewrite PTO #255.

C. **The PCLC Waited Nearly Three Weeks to Notify AMS That They Did Not Receive General Expert Reports, and Over Seventy Days to File This Motion.**

On August 30, 2018, almost three weeks after the PCLC had purportedly expected to be served with expert reports, Amy Eskin emailed Barbara Binis, inquiring as to whether she had "missed…an email" containing "defendant's general expert reports." *See* Mem. Ex. D. Ms. Eskin did not at that time request any expert disclosures.

---

served both on the PCLC and case-specific counsel on August 31, 2018 and September 20, 2018, respectively -- well in advance of any scheduled depositions for these experts and resulted in neither surprise nor prejudice to plaintiffs.

The next day, August 31, 2018, AMS provided Fidelma Fitzpatrick and Amy Eskin with the requested expert reports. Unfortunately, through no fault of AMS, the transmission to Ms. Eskin was rejected. *See* Mem. Ex. E. Ms. Eskin was then sent multiple emails containing the reports as soon as AMS was made aware of the failed transmission. *See* Mem. Exs. E, F, F-1, F-2.

Next, on September 13, 2018, Amy Eskin requested the expert disclosures. *See* Mem. Ex. G. Ms. Eskin received the disclosures the following day, along with an additional copy of the general expert reports. *Id.*

Importantly, the vast majority of the expert reports that were served on August 31, 2018 were *identical* to those filed previously in June 2017. *See, e.g.*, Mem. Ex. L-1. Indeed, many of the expert report files served on the PCLC on August 31, 2018 still bore their original 2017 date. *Id.* Had the PCLC actually liaised with their Plaintiffs'-side counterparts they would have not only had access to the expert materials they sought, but would also have been able to notify AMS far earlier of their desire to be served with those materials. AMS would have happily sent the requested reports, as it had done in the past.

## II. LEGAL ARGUMENT

**A.     The PCLC's Motion Fails to Satisfy the Procedural Requirements Imposed By the Local Rules for the Southern District of West Virginia.**

By the PCLC's own admission, they were aware as of August 30, 2018 that they had not received AMS's expert designations and reports, eighteen days after AMS served Plaintiffs' counsel for individual cases on August 13, 2018. *See* Mem. at 4 ¶. 2. Between August 30 and November 9, AMS's counsel served its expert reports and disclosures on the PCLC two separate times, and exchanged copious emails without a substantial complaint from the PCLC regarding

- 6 -

the expert materials. Nonetheless, consistent with their proclivity for inertia, the PCLC waited seventy days to file their sanctions motion on November 9, 2018.

Southern District of West Virginia Local Rule 37.1, entitled "Discovery Disputes," provides, in pertinent part:

> Motions to compel or other motions in aid of discovery not filed within 30 days after the discovery response or disclosure requirement was due are waived, and in no event provide an excuse, good cause or reason to delay trial or modify the scheduling order. The 30-day deadline may be extended by court order for good cause shown, or by stipulation of the parties, so long as the extension does not interfere with the scheduling order.

L.R. 37.1(c). In this case, the PCLC exceeded the thirty-day deadline of September 30, 2018, by an additional forty days. Under the Rule, this delay waived the PCLC's motion.

The thirty-day deadline enables the Court to fashion a timely remedy that sensibly restores the parties' rights. In this instance, after PCLC realized they had not received copies of the expert reports on August 13, they contacted AMS on August 30. AMS immediately emailed copies. Both Fidelma Fitzpatrick and Amy Eskin received the requested reports the following day, August 31, 2018, though the reports had to be individually sent to Amy Eskin due to email size limitations.[2] Another two weeks passed before the PCLC realized they had not received copies of AMS's disclosures, which they requested on September 13. AMS immediately emailed copies of the disclosures, along with another copy of the reports on September 14. (One cannot help but wonder why the PCLC could not obtain the disclosures from each other or from the Plaintiff lawyers actually handling the cases). Beyond that, it is hard to see what additional remedy is necessary for the late receipt of the expert reports or disclosures. *Accord Travelers*

---

[2] AMS did not receive bounce-back messages following its individual transmissions of reports to Amy Eskin on August 31, 2018, as well as its transmissions of reports and disclosures on September 14, 2018. The PCLC's assertion in their Memorandum at p. 4 that certain reports were received for the first time on September 14, 2018 is inconsistent with AMS's records.

*Prop. Cas. Co. of Am. v. Mountaineer Gas Co.*, 2018 U.S. Dist. LEXIS 43208, *20, 2018 WL 1370862 (S.D. W. Va. Mar. 16, 2018) (Goodwin, J.) (denying a motion for sanctions when movant "provided no reasonable explanation or justification for the time lapse between the dispute becoming ripe and the spoliation motion being filed."); *see also Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 859 (S.D. W. Va. June 19, 2018) (motions regarding discovery disputes and sanctions should be filed "as soon as reasonably possible after discovery of the facts that underlie the motion" to "allow the Court to potentially take other, less drastic, measures to remedy…").

This much is clear: if the PCLC had sought court intervention in August, when it learned of the facts underlying this motion, the PCLC would not and could not have asked for $100,000 and complete preclusion of AMS's experts. The PCLC's delay is inexcusable and prejudicial.

**B.     The PCLC's Motion Fails on Substantive Grounds Under Federal Rule of Civil Procedure 37 and Fourth Circuit Law.**

AMS's actions were substantially justifiable and harmless, making the PCLC's demands to eliminate AMS's experts unwarranted under Rule 37. As a legal basis for sanctions, the PCLC cite Rule 37 as well as the court's inherent power. Mem. at 7. Fed. R. Civ. P. 37(c)(1) is especially pertinent because it specifically governs sanctions for failures to disclose or supplement as required by Rule 26(a) or (e). Rule 26(a) and (e) specifically include procedures and requirements for expert disclosures. But the PCLC never cite the language of Rule 37(c)(1). Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, **unless the failure was substantially justified or is harmless**." That is, if a nondisclosure was harmless, there is no basis for sanctions. The PCLC seemingly acknowledge that Fourth Circuit cases applying Rule 37 do not

impose sanctions unless the nondisclosure and noncompliance with discovery orders was both without substantial justification and harmful, *see* Mem. at 7-8, yet the PCLC do not even try to demonstrate how the late disclosure was harmful.

The Fourth Circuit articulated five factors lower courts should consider to determine whether a Rule 37(c) (1) violation was harmless or substantially justified:

> (1) The surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose evidence.

*Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F. 3d 592, 596-597 (4th Cir. 2003). When subjected to this five-factor test, it becomes clear that the PCLC's motion must fail.

### 1. **AMS's Service of Only Individual Case Counsel Was Substantially Justified.**

#### a. The Cited PTOs Say Nothing About Service on the PCLC.

The PCLC cite PTOs #255, 4, and by cross-reference PTO #1, in support of the claim that AMS is obligated to serve expert disclosures, designations, and reports on PCLC. But the PCLC never quotes from any of these PTOs. In fact, none of the PTOs the PCLC cite requires AMS to serve expert materials on the PCLC.

#### b. AMS Operated in Total Compliance with Prior Accepted Practice.

Furthermore, during the previous Wave Orders, AMS served only the individual case counsel without any complaints from PCLC. AMS would have been happy to accommodate the PCLC if they requested receipt of expert designations, disclosures, and reports simultaneously with individual case counsel. AMS's actions were substantially justified because service of expert materials on the PCLC is a courtesy, not a duty.

### 2. AMS's Service of Only Individual Case Counsel Was Harmless.

The PCLC failed to identify any concrete harm they suffered by AMS not serving expert materials on the PCLC along with individual case counsel. The PCLC cannot argue they were surprised by AMS's expert reports. With one exception, AMS's general expert reports were identical to those AMS served on the PCLC in previous waves. If the PCLC performed their duties in even a perfunctory manner and communicated with individual case counsel, they could have had access to the expert materials on the date AMS served the expert packets. Additionally, within a day of the PCLC's request, AMS served expert designations, disclosures, and reports on the PCLC twice between August 30, 2018 and September 14, 2018. Thus, the PCLC have no basis to claim they incurred any harm from AMS's actions.

### C. The PCLC's Request for Sanctions is Unsubstantiated and Disproportional.

Through revisionist history and gross mischaracterizations, the PCLC have attempted to cobble together a "pattern" of AMS ignoring court orders to justify an outlandish request for $100,000 in monetary sanctions and the elimination of several AMS experts.[3] While AMS's navigation through the complexities and tight timelines imposed by the Wave Order has occasionally been less than smooth, the PCLC cannot point to behavior to warrant the sanctions they seek here. The Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that "there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure any sanction imposed is fashioned to address the

---

[3] Through an honest mistake, AMS filed its case-specific *Daubert* motions in the MDL 2325, as opposed to in the individual member cases. The PCLC lump this into their motion in an attempt to justify sanctions, conveniently omitting that several Plaintiffs' counsel also filed their responses in MDL 2325. This Court has already addressed this error, cautioning *both* parties to follow orders and directives, but declining to issue sanctions. *See* Order Dated November 6, 2018, DKT # 6879.

identified harm caused by the party's misconduct." *Ohio Power Co. v. Pullman Power, LLC*, 741 S.E.2d 830, 835 (W. Va. Apr. 1, 2013).  Since AMS served the expert materials on the PCLC twice at their request, there is no harm to cure.  The PCLC has yet to explain how they incurred a $100,000 cost because AMS served the expert materials on them eighteen days later than the individual case-specific Plaintiff counsel.  Nor can the PCLC justify their request to strike several of AMS's experts, especially considering the individual case counsel who are directly responsible for the expert process were timely served.

### III. CONCLUSION

The PCLC's sanctions motion demonstrates no violation of a court order and no prejudice.  The sanctions motion itself violates the Local Rules, and offers no justification for being filed seventy days after the alleged discovery violation.  Finally, the requested sanctions are thoroughly irrational.  For these reasons, this Court should deny the PCLC's sanctions motion.

Respectfully submitted,

| | |
|---|---|
| */s/ Stephen J. McConnell*_____ | */s/ Michael J. Farrell*_____ |
| Barbara R. Binis, Esq. (PA Bar #62359) | Michael J. Farrell, Esq. (WVSB # 1168) |
| Stephen J. McConnell, Esq. (PA Bar #80583) | Erik W. Legg, Esq. (WVSB # 7738) |
| Rachel B. Weil, Esq. (PA Bar # 49844) | **FARRELL, WHITE & LEGG PLLC** |
| **REED SMITH LLP** | 914 Fifth Avenue |
| Three Logan Square | P.O. Box 6457 |
| 1717 Arch Street, Suite 3100 | Huntington, WV  25772-6457 |
| Philadelphia, PA 19103 | (304) 522-9100 (Telephone) |
| (215) 851-8100 | mjf@farrell3.com |
| bbinis@reedsmith.com | ewl@farrell3.com |
| smcconnell@reedsmith.com | |
| rweil@reedsmith.com | |

***Attorneys for Defendant American Medical Systems, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

    /s/ *Barbara R. Binis*